**Case No. 13-3070**

IN THE UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

GRACE HWANG,                                )
          Appellant/Petitioner,     )
                             )

v.                                          )
                             )
                             )    Case No.: 13-3070
                             )

KANSAS STATE UNIVERSITY,                    )
          Appellee/Respondent.      )
                             )

---

Appeal from the United States District Court

for the District of Kansas

The Honorable Eric F. Melgren

District court No. 11-CV-04185-EFM

---

APPELLANT'S OPENING BRIEF

---

Respectfully Submitted,

LUANNE C. LEEDS

LEEDS LAW, LLC

515 SW Horne Street, Suite 201

TOPEKA, KS 66606

PHONE:    785-354-0727

Fax:       785-354-0736

Oral Argument is requested.

July 5, 2013

# TABLE OF CONTENTS

ATTACHMENTS ................................................................................................. iv

TABLE OF AUTHORITIES ................................................................................ v

STATEMENT OF PRIOR OR RELATED APPEALS .................................... 1

STATEMENT OF JURISDICTION ................................................................. 1

STATEMENT OF ISSUES ............................................................................... 1

    I.     To survive to a motion to dismiss, a plaintiff does not need to state a prima facie case, but only needs to provide enough factual allegations to put the defendant on notice of what the plaintiff's claims are and what they are based on. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). Hwang's complaint contains 115 factual allegations that, together, state a prima facie case of discrimination and retaliation. Did the district court err in dismissing her case for failure to state a claim? ............................................................................. 1

    II.    In reviewing a complaint on a motion to dismiss, the district court must consider all of its non-conclusary factual allegations as the truth. All inferences from these allegations must be construed in the light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Must the district court be reversed when it repeatedly either used the wrong legal standard, disregarded Hwang's factual allegations, construed them in the light most favorable to the University, or considered facts outside the complaint? ........... 2

STATEMENT OF THE CASE ........................................................................... 2

STATEMENT OF THE FACTS ........................................................................ 3

SUMMARY OF THE ARGUMENTS ............................................................. 9

ARGUMENTS AND AUTHORITIES ........................................................... 12

    I.     The district court erred in dismissing Hwang's complaint because it plausibly states a claim and its detailed factual allegations give the University ample notice of the claims against it ...................................................................... 12

    II.    The district court erred in dismissing Hwang's complaint because it used the under the wrong legal standard, disregarded Hwang's factual allegations, construed them in the light most favorable to the University, an considered facts outside the complaint. ........................................................................ 20

CONCLUSION ................................................................................................. 26

STATEMENT OF COUNSEL AS TO ORAL ARGUMENT ........................................ 26

CERTIFICATE OF DIGITAL SUBMISSION ................................................................ 27

CERTIFICATE OF COMPLIANCE ............................................................................ 27

CERTIFICATE OF SERVICE ...................................................................................... 28

## **ATTACHMENTS**

1. EEOC Enforcement Guidance: Reasonable Accommodation ............................... 18

2. Memorandum and Order dated February 28, 2013

3. Demonstrative Exhibit regarding District Court's Order

## <u>TABLE OF AUTHORITIES</u>

## CASES

*al–Kidd v. Ashcroft,* 580 F.3d 949 (9th Cir.2009) ........................................ 10

*Anderson v. Coors Brewing Co.,* 181 F.3d 1171 (10th Cir. 1999) ............................ 16, 19

*Aquilino v. Univ. of Kansas*, 268 F.3d 930 (10th Cir. 2001) ............................................. 15

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) .............................................................9, 12, 22, 23

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...............................................9, 12, 13, 22

*Braden v. Wal-Mart Stores, Inc.* 588 F.3d 585 (8th Cir. 2009) ........................................ 22

*Christensen v. Park City Mun. Corp.*, 554 F.3d 1271 (10th Cir. 2009). ........................... 9

*Danville v. Reg'l Lab Corp.,* 292 F.3d 1246 (10th Cir.2002) ........................................ 18

*DirecTv, Inc. v. Treesh,* 487 F3d 471 (6th Cir. 2007) ....................................................... 10

*E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028 (10th Cir. 2011) ................................... 17

*Erickson v. Pardus*, 551 U.S. 89 (2007) ..............................................................1, 9, 12

*Fischer v. Forestwood Co., Inc.*, 525 F.3d 972 (10th Cir. 2008) ................................... 15

*Fritz v. Charter Twp. Of Comstock,* 592 F.3d. 718 (6th Cir. 2010)................................. 10

*Hall v. U.S. Dep't of Labor,* 476 F.3d 847 (10th Cir.2007) ............................................. 17

*Jones v. U.P.S., Inc.,* 502 F.3d 1176 (10th Cir. 2007) ..................................................... 19

*Khalik v. United Air Lines,* 671 F.3d 1188 (10th Cir. 2012) .................................... 10, 12

*Merritt v. Fogel*, 349 F.App'x 742, 746(3d Cir. 2009) .................................................... 23

*Monaco v. Quest Diagnostics, Inc.,* 08-2500-KHV, 2010 WL 3843622 (D. Kan. Sept. 24, 2010)................................................................................................................. 20

*Purvis v. Williams*, 276 Kan. 182, 188, 73 P.3d 740 (2003) .......................................... 13

*Ramirez v. Oklahoma Dep't of Mental Health*, 41 F.3d 584 (10th Cir. 1994) ................ 19

*Ramsey v. City & County of Denver,* 907 F.2d 1004 (10th Cir. 1990) ............................ 18

*Swanson v. Bixler,* 750 F.2d. 810 (10th Cir. 1984)........................................................ 25

*Swanson v. Citibank, N.A.,* 614 F.3d 400 (7th Cir. 2010) ......................................... 12, 13

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) ..............................................1, 17, 25

*Tate v. Farmland Industries, Inc.,* 268 F.3d 989 (10th Cir.2001) ................................... 14

*Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981) ....................................... 15

*Woodman v. Runyon,* 132 F.3d 1330 (10th Cir. 1997).................................................... 14

## STATUTES

28 U.S.C. § 1291 ........................................................................................... 1

28 U.S.C. § 1331 ........................................................................................... 1

28 U.S.C. § 1343 ........................................................................................... 1

29 U.S.C. § 701, *et seq.* ............................................................................... 1

29 U.S.C. § 794, *et seq.* ............................................................................... 2

## OTHER AUTHORITIES

Fed. R. Civ. P. 26(g) ..................................................................................... 2

Fed. R. Civ. P. 8 ...................................................................................... 9, 12

## STATEMENT OF PRIOR OR RELATED APPEALS

There are no prior or related appeals in the above-captioned matter.

## STATEMENT OF JURISDICTION

Appellant, Grace Hwang, brought this action under the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.* The district court had subject matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343. On February 28, 2013, the district court entered an order granting Defendant's Motion to Dismiss. Plaintiff filed an appeal on March 18, 2013. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

I. To survive to a motion to dismiss, a plaintiff does not need to state a prima facie case, but only needs to provide enough factual allegations to put the defendant on notice of what the plaintiff's claims are and what they are based on. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). Hwang's complaint contains 115 factual allegations that, together, state a prima facie case of discrimination and retaliation. Did the district court err in dismissing her case for failure to state a claim?

1

**II.** In reviewing a complaint on a motion to dismiss, the district court must consider all of its non-conclusary factual allegations as the truth. All inferences from these allegations must be construed in the light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Must the district court be reversed when it repeatedly either used the wrong legal standard, disregarded Hwang's factual allegations, construed them in the light most favorable to the University, or considered facts outside the complaint?

## STATEMENT OF THE CASE

Plaintiff-Appellant, Grace Hwang, alleges that Kansas State University terminated and retaliated against her because of her disability. Hwang alleges the University's illegal acts include denying her accommodation, forcing her to resign, wrongfully cancelling her health insurance, denying her COBRA benefits, and failure to hire or consider her for open positions for which she was qualified and applied.

On December 15, 2011, Hwang brought this case under the Rehabilitation Act of 1973, 29 U.S.C. § 794, *et seq.* captioned, *Grace Hwang v. The State of Kansas and Kansas State University*. (Aplt. App. at 2 no. 1). On April 5, 2012, Hwang amended her complaint and dismissed the State of Kansas. (Aplt. App. at 3 no. 20 and Aplt. App. at 6-18). On April 13, 2012, the University filed a 12(b)(6) Motion to Dismiss based on sovereign immunity and failure to state a claim. (Aplt. App. at 3 no. 21).

On May 25, 2012, the University filed a Second Motion to Stay Discovery based on Eleventh Amendment immunity. (Aplt. App. at 4 no. 28). On August 13, 2012, the

2

Magistrate Judge grated the University's Motion to Stay Discovery, but with the admonishment to defense counsel "to review Fed. R. Civ. P. 26(g) and the possibility of sanctions if the court determine[d] that the objection to proceeding with discovery… was asserted to cause unnecessary delay." (Aplt. App. at 111, footnote 3 and Aplt. App. at 5 no. 37).

On May 14, 2012, Hwang responded to the University's Motion to Dismiss (Aplt. App. at 4 no. 25 and Aplt. App. 56-78), and the University replied on May 25, 2012, when the motion was ripe for decision. (Aplt. App. at 4 no. 30 and Aplt. App. 88-90). The district court issued its ruling Nine months later, on February 28, 2013, dismissing Hwang's  claims for failure to sufficiently state a claim on any of the charges. (Aplt. App. at 5 no. 38 and Aplt. App. at 113-129). On March 18, 2013, Hwang timely filed her Notice of Appeal with this Court. (Aplt. App. at 5 no. 40).

The following are the facts of the case and the content of the allegations in Hwang's complaint:

## **<u>STATEMENT OF THE FACTS</u>**

**Grace Hwang's Education and Background at Kansas State University.**

Grace Hwang, a single mother of two (Aplt. App. at 11 ¶ 49), is a Fulbright Scholar with a graduate degree from Tufts University, and a law degree from Georgetown. (Aplt. App. at 7 ¶ 11). In 2010, Hwang was an assistant professor in the leadership studies program (Aplt. App. at 8 ¶ 13); and was well respected by students and administration alike. (Aplt. App. at 8 ¶¶ 15-16). Hwang had been employed at the

University for 15 years on a year to year contract which, by custom and practice, was automatically renewed each year.  (Aplt. App. at 8 ¶ 14).

**Hwang becomes critically ill and receives a bone marrow transplant.**

In June of 2009, Hwang becomes critically ill and is diagnosed with acute leukemia.  (Aplt. App. at 8 ¶ 20).  The disease is particularly aggressive and Hwang's oncologists determine that her survival depended on an immediate bone marrow transplant — which she receives that same month.  (Aplt. App. at 8 ¶¶ 21-22).  Post-transplant,  Hwang requires an extensive and demanding course of treatment requiring care at an inpatient cancer facility.  (Aplt. App. at 9 ¶ 23).  She advises the University and her department head, Mary Tolar, of her diagnosis and her need to take several months medical leave.  (Aplt. App. at 9 ¶ 26-27).

As expected, Hwang remains hospitalized through the summer and fall of 2009.  (Aplt. App. at 9 ¶ 33).  To cover these absences, Hwang uses two months of accumulated leave time. (Aplt. App. at 9 ¶ 24).  When her accumulated leave was exhausted, she was able draw on her coworkers' unused leave, which they donated to her through a University program set up for this purpose.  (Aplt. App. at 9 ¶ 27).

**Hwang's plan to return to work is derailed by a campus-wide viral outbreak which requires campus a limited extension of her sick leave.**

Hwang is finally, discharged from inpatient care in November of 2009  (Aplt. App. at 9 ¶ 33) and is preparing to return to the classroom in January, as scheduled, for the spring semester.  (Aplt. App. at 91 ¶ 2 and Aplt. App. 108 at ¶ 1).  But this is not to happen.  (Aplt. App. at 10 ¶ 34).  The University experiences a campus-wide outbreak of

H1N1 virus in December.  (Aplt. App. at 10 ¶ 34).  With Hwang's immune system still dangerously compromised because of the bone marrow transplant, contact with anyone carrying the virus could be disastrous.  (Aplt. App. at 10 ¶ 34).  So her doctors order her to stay off of the campus until the end of the spring semester — enough time for the virus to subside and Hwang to rebuild her immune system.  (Aplt. App. at 10 ¶ 34).

Hwang explained the situation to Tolar, and  that she would need additional leave — at most until the end of the spring semester .  (Aplt. App at 10 ¶ 35).  Hwang is not concerned about leave because earlier, the departmental business manager had assured Hwang that she had plenty of shared leave remaining.  (Aplt. App. at 10 ¶ 37).  The summer semester would not be a problem because Hwang normally teaches online classes, so staying away from the campus will not be an issue.  (Aplt. App. at 10 ¶ 36; Aplt. App. at 47; and Aplt. App. at 76 at second e-mail).

**The University advises Hwang to apply for LTD, but does not tell her that LTD will require her termination.**

In December, 2009, the Human Resources ("HR") department tells Hwang  that she should apply for Long Term Disability ("LTD") so she will able to collect benefits, just in case she was *not* able to return to work by the summer of 2010, as planned.  (Aplt. App. at 10 ¶ 38-39).  Hwang does as she is advised, and about two months later, HR director, Stephanie Harvey, calls Hwang and tells her that she was approved for LTD.  (Aplt. App. at 10 ¶40).  Harvey also – for the first time – tells Hwang that her position can be opened up to other applicants within a week, that she will have to apply for her position  if she wants it  back, and that in order to receive LTD she will have to resign

(Aplt. App. at 10 ¶ 41).  Finally, Harvey tells her that she has *never* known anyone to

return to work at the University after going out on LTD.  (Aplt. App. at 42).

**Hwang asks for accommodations and suggests options, but the University gives her two options. Both of then require that she be terminated.**

Disturbed, Hwang e-mails Tolar the following day to ask if Harvey's statements

were true; and if so, whether the University can "label" her absence as unpaid leave.

(Aplt. App. at 11 ¶¶ 42-43 and Aplt. App. at 42).  Hwang reiterates that she planned   to

return and teach her online classes in the summer – but now it appears that as a condition

of LTD, she will not be allowed to teach until June 23rd – too late for the summer

semester.  (Aplt. App. at 42).  Finally, Hwang asks Tolar if she has any other options

(that would not require termination).  (Aplt. App. at 11 ¶ 43 and Aplt. App. at 42).

Tolar responds eight days later, and tells Hwang the she is only entitled to *six*

*months* of shared leave[1] (Aplt. App. at 44), which will be exhausted the very next day.

(Aplt. App. at 44).  Accordingly, Tolar tells Hwang she has two options, both of which

will result in termination.  (Aplt. App. at 11 ¶ 45 and Aplt. App. at 44).  The first option

is LTD, which will provide Hwang with a fraction of her income and benefits — and

require that she resign immediately.  (Aplt. App. at 11 ¶ 45 and Aplt. App. at 44).

The second option is described as "leave without pay."  It will be the default

option should Hwang fail to choose and will be effective immediately.  (Aplt. App. at 11

¶ 45 and Aplt. App. at 44).  It provides, as its name indicates, that Hwang can take leave,

but she will receive no pay, no insurance and no other benefits.  (Aplt. App. at 11 ¶ 45

---

[1] Not twelve months, as she was originally informed by the business Manager, Monica Strathman. (Aplt. App. at 10 ¶ 37)

and Aplt. App. at 44).  Then, on June 12th – her contract renewal date – Hwang's "leave" will end, she will be terminated, and she will not be eligible for disability benefits.  (Aplt. App. at 11 ¶ 45 and Aplt. App. at 44).

Tolar warns Hwang that she needs to make a decision quickly, stating that: "*The purpose of this note is to inform you of your options as your shared leave ends tomorrow...*"  (Aplt. App. at 44).  "*If we do not hear from you, you [within seven days] will not receive LTD benefits, you will be responsible for payment of your health insurance premiums, and your employment will end on June 12, 2010, as stated in your contract.*"  (Aplt. App. at 44-45).

**Hwang agrees to accept LTD, but continues to suggest options that might allow her to keep her job.**

The next day Hwang agrees to LTD, stating, "I don't really have many choices here.  So the Long-Term Disability is what I will proceed with."  (Aplt. App. at 11 ¶ 49; Aplt. App. at 12 ¶ 50; and Aplt. App. at 47).  Hwang, again, insists that she had planned to come back full time on August 1st of that year.  (Aplt. App. at 47).  But she explains that she could be back before her contract expired on June 12th.  (Aplt. App. at 47).  She says she will check with her doctors about teaching her online classes from home via computer or even on campus, as it is deserted in the summer anyway.  (Aplt. App. at 47).

**Tolar rejects any of Hwang's options for accommodation tells her that her position at the institution is finished.**

Tolar responds to Hwang's suggestions and says that she "want[s] to clarify [Hwang's] expectations of employment." (Aplt. App. at 76, first e-mail).  Tolar explains that Hwang was terminated on February 21st, when she accepted LTD, and that the only

7

reason that she mentioned June 12th date was because this is the date that her contract would have expired had she *not* chosen LTD. (Aplt. App. at 76, first e-mail). Tolar explains that "No new contract is planned at this time . . . [but when Hwang is] "fully recovered and ready for full time employment . . . we will be happy to review our needs and see what is possible." (Aplt. App. at 76, first e-mail).

**Within a week of terminating Hwang, the University cancels her health insurance.**

Three days later, on February 22nd, HR sends Hwang a letter officially notifying her of her termination. (Aplt. App. at 12 ¶ 51 and Aplt. App. at 51-55). The letter contains no reference or instructions in regard to her health insurance or COBRA rights. (Aplt. App. at 12 ¶ 53 and Aplt. App. at 51-55).

About a week later, on March 1st, Hwang went to get her chemotherapy, and her physician's staff tells her that the University cancelled her health insurance. (Aplt. App. at 12 ¶ 52 and Aplt. App. at 78). That same day, Hwang's physician, Dr. McGuirk, writes to University about its abrupt cancellation of Hwang's insurance. He also states that Hwang was in full remission, that she can return to work. He explains that if she did require any accommodations, they would be minimal and he encourages the University to call him with any questions (Aplt. App. at 12 ¶ 54-55 and Aplt. App. at 78).

**Hwang applies for two open positions which she is qualified for but she is not interviewed or hired.**

The following day, March 2nd, Hwang applies to the University for the open position of special assistant to the president for community relations. (Aplt. App. at 12 ¶ 57). Despite her qualifications, she is never contacted or given the opportunity for an

interview. (Aplt. App. at 12 ¶ 58). The University later hires an applicant from Colorado. (Aplt. App. at 13 ¶ 59). Six days later, on March 8th, Hwang files an internal discrimination complaint with the University. (Aplt. App. at 13 ¶ 60). On June 24th, 2011, Hwang applies for another open position that she is qualified for – Associate Provost for International Programs. (Aplt. App. at 13 ¶ 62). Hwang is not interviewed or hired or for the position and again, another applicant was selected. (Aplt. App. at 13 ¶¶ 63-64). In December 2011, Hwang filed suit against the University in Federal Court. (Aplt. App. at 2 no. 1).


## SUMMARY OF THE ARGUMENTS

**Hwang's factual allegations are more than sufficient to meet the notice pleading standard enunciated in *Twombly* and *Iqbal*.**

Hwang's complaint delivers everything and more than is required under Fed. R. Civ. P. 8 ("Rule 8") All that a plaintiff's complaint needs to overcome a 12(b)(6) motion to dismiss is a short and plain statement of her claims showing that the she is entitled to relief. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Threadbare recitals of the elements of a claim supported by mere conclusory statements will not do. *Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009). But, "even after *Twombly*, a plaintiff's complaint only needs to contain enough allegations of fact to state a claim to relief that is plausible on its face." *Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1276 (10th Cir. 2009). And all the plausibility standard requires of the plaintiff is to state a claim that is plausible enough for a court to expect that discovery might show evidence that can prove her allegations.

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  The law does not require a plaintiff to prove her case on her pleadings.  *Id.*

Hwang's complaint provides more than enough facts for  the University to know what the charges against it are, and what grounds they are brought on. The law does not require the complaint contain all the facts necessary to carry the plaintiff's burden. *Khalik v. United Air Lines,* 671 F.3d 1188, 1192 (10th Cir. 2012)(citing to *al–Kidd v. Ashcroft,* 580 F.3d 949, 977 (9th Cir.2009)).  Hwang's allegations are enough that if she is able to prove them, she has plausible claim for relief.  This all that Hwang needs to do. This all that the law requires.

But there is also another burden to consider on a motion to dismiss – the defendant's.  A defendant bears the burden of persuasion on a motion to dismiss. *DirecTv, Inc. v. Treesh,* 487 F3d 471, 476 (6th Cir. 2007).  To prevail, the University must demonstrate that Hwang's claims are so far-fetched as to be implausible – that even taking all of her factual allegations as true, the University is "clearly entitled to judgment" at this early stage of the litigation.  *Fritz v. Charter Twp. Of Comstock,* 592 F.3d. 718, 722 (6th Cir. 2010) (internal citations omitted).  Although it offers the formulaic "fail[ure] to state a claim upon which relief can be granted" (Aplt. App. at 19 ¶1), and "[c]onclusary statements and legal conclusions" (Aplt. App. at 25), the University's motion contains no substantive discussion or identification of the implausibility of Hwang's claims.

Hwang has met her burden.  Hers are not threadbare recitals of the elements of her charges.  She details the actions, events, and dates at the heart of her claims.  She

identifies the persons involved and the roles they played in the discrimination or retaliation.  Hwang has carried her burden and deserves an answer from the defendant and an opportunity for discovery.

On the other hand, the University has done nothing to carry its burden of persuasion.  Hwang succinctly and specifically stated the who, what, where and when of her claims.  This is more than the law requires.  The University tells, but does not show, how Hwang's allegations fail to state a claim.  The University is unable to support its motion and has failed to meet its burden.  The district court erred in dismissing Hwang's claims.

**The district court erred in applying the wrong standards to a 12(b)(6) motion to dismiss.**

Finally, the district court erred in dismissing Hwang's claims when it applied the wrong legal standard, imposed heightened specificity requirements  disregarded some of Hwang's well pled allegations,  improperly construed others  to the benefit of the University; and  constructed arguments and  defense theories for the benefit of the University.  These are in contradiction of the Federal Rules of Civil Procedure and the precedents of this Court.  The district court's order of dismissal should be reversed.

<u>**ARGUMENTS AND AUTHORITIES**</u>

**I.  The district court erred in dismissing Hwang's complaint because it plausibly states a claim and its detailed factual allegations give the University ample notice of the claims against it.**

The district court dismissed Hwang's claims because she "failed to allege sufficient facts to show that she is entitled to any relief from the University."  (Aplt. App. at 125).  But in doing so the district court imposes a far more burdensome standard than the Federal Rules of Civil Procedure require.

**1.  The pleading standard under Fed. R. Civ. P. 8(a)(2)**

Rule 8(a)(2),  sets out the standard that a plaintiff must meet to sufficiently plead a claim and it  is not an onerous one.  To survive a motion to dismiss, a complaint need not contain detailed factual allegations."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Although a complaint requires more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action," the pleading standard is liberal. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  The plaintiff is merely required to provide the defendant with fair notice of what the claim is and the grounds on which it rests. *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (quoting *Twombly*).

**2.  *Iqbal, Twombly* and the plausibility standard**

Recently, in the *Iqbal* and *Twombly* cases, the Supreme Court clarified the pleading standard further, holding that to satisfy Rule 8, a claim must put forth enough factual allegations be "plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (quoting *Twombly,* 550 U.S. at 570).  This plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a

12

reasonable expectation that discovery will reveal evidence of [the illegal behavior alleged in the complaint]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 (2007).

The 7th CircuitCourt explained this plausibility standard in *Swanson v. Citibank, N.A.*, stating simply that "[the] plaintiff must give enough details about the subject matter of the case to present a story that holds together. In other words, the court should ask itself *could* these things have happened, not *did* they happen. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). "For cases governed only by Rule 8, it is not necessary to stack up inferences side by side and allow the case to go forward only if the plaintiff's inferences seem more compelling than the opposing inferences." *Id.* at 404.

Hwang's First Amended Complaint satisfies the plausibility standard as set forth in *Twombly*, because it contains factual allegations that show how, when and where the alleged violations occurred and identify the persons involved. Hwang's allegations taken as whole, state a plausible case. She presents a story that "holds together," making it plausible on its face – it satisfies Rule 8.

### 3.   Hwang's Rehabilitation Act discrimination claims are plausible because she puts forth a prima facie case

To state a cause of action for discrimination under the Rehabilitation Act, a plaintiff must allege the following: (1) She is disabled within the meaning of the Act; (2) that she is otherwise qualified to perform the job; (3) the defendant terminated [or other adverse action] her because of her disability; and (4) that her employer is a recipient of federal financial assistance. *Purvis v. Williams*, 276 Kan. 182, 188, 73 P.3d 740, 745 (2003). The University does not dispute elements 1 and 4. The only issues before the

13

district court were (1) whether Hwang is "otherwise" qualified; and (2) whether the University took adverse action against Hwang because of her disability.

> **a.  Hwang sufficiently pled that she was "otherwise qualified" because she alleged that she had the qualifications for the job in question and that with reasonable accommodation, she was able to perform all of the essential functions of that job.**

The court declined to rule on this issue (Aplt. App. at 113-129), but it comprised a large portion of the University's argument in its motion to dismiss.  (Aplt. App. at 29-35). The University is wrong.  Hwang is "otherwise qualified" under the Rehabilitation Act.

To show that she is "otherwise qualified," under the Rehabilitation Act, Hwang must show that she is (1) an individual with a disability[2] who, (2) with or without reasonable accommodation, (3) can perform the all of the essential functions of her job.[3] *Tate v. Farmland Industries, Inc.,* 268 F.3d 989, 992–993 (10th Cir.2001).

In order to show that she can perform all of the essential duties of her job, a plaintiff must first show that she has the skill, experience and credentials necessary for the position.  *Id.*  Here, Hwang alleges she is qualified by education and credentials.  She had been performing all of the essential duties of her job before her disability (Aplt. App. at 8 ¶¶ 12-16), and nothing has changed since her disability except for the disability itself. (Aplt. App. at 62).

Hwang further alleged she would have been able to perform all of the essential functions of her job, if she had an accommodation that would allow her to remain off

---

[2] That Hwang is an individual with a disability is not in dispute.
[3] The 10th Circuit construes claims brought pursuant to the Rehabilitation Act under the same standards as the ADA. *Woodman v. Runyon*, 132 F.3d 1330, 1338 (10th Cir. 1997)

campus until the end of the spring semester.  (Aplt. App. at 10 ¶ 35 and Aplt. App. at 47).

Hwang presented  the University with  a variety of  options for accommodation

including:  shared leave until the end of summer semester, or until the end of the spring

semester with online teaching in the summer (Aplt. App. at 10 ¶¶ 35-36), or leave

without pay with the same two durational options  (Aplt. App. at 11 ¶ 43; Aplt. App. at

31; Aplt. App. at 42; and Aplt. App. at 47).  Hwang also suggested temporary online

teaching duties[4] (Aplt. App. at 10 ¶ 36 and Aplt. App. at 47), or any other

accommodation that would allow her remain off campus until she could safely return at

the end of spring semester.  (Aplt. App. at 11 ¶ 43; Aplt. App. at 31; and Aplt. App. at

42).  Hwang has sufficiently alleged that she is otherwise qualified.

The University claims that Hwang is not "otherwise qualified" because the

accommodation she requested in not reasonable.  It is not reasonable, it claims, because

extended leave is not a reasonable accommodation when the employee does not give an

expected duration of impairment and Hwang "did not provide an expected duration of

impairment." (Aplt. App. at 31-32).  There are three reasons that the University's claim is

invalid.

First, whether Hwang was otherwise qualified is an improper inquiry at the motion

to dismiss stage.  The question is whether Hwang has plausibly *pled* her case, not

whether she has properly proved *it*.  The two cases that the University cites in support are

based on decisions on summary judgment standards.[5]

---

[4] Hwang taught online during the summer semester for the previous three years.
[5] See *Aquilino v. Univ. of Kansas*, 268 F.3d 930, 932 (10th Cir. 2001) (cited at Aplt. App. at 27, fn 38) and *Fischer v. Forestwood Co., Inc.*, 525 F.3d 972 (10th Cir. 2008) (cited at Aplt. App. at 27, fn 40).

Second, the University's claim that did not give an expected term of impairment is based on an attorney-created explanation. This runs headlong into the rule in *Burdine*, that a prima facie case cannot be rebutted by argument of counsel, but only by admissible evidence. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 101 (1981). If the University wishes to proffer a reason that Hwang is not otherwise qualified, it needs to provide an affidavit and file a motion for summary judgment.

Third, and most important, Hwang *did* give the University an expected duration of impairment. Defense counsel stated repeatedly that Hwang requested unlimited leave. (Aplt. App. at 31 and Aplt. App. at 33). Hwang alleged that she clearly defined the duration of her impairment and the extended leave which she required – through end of spring. (Aplt. App. at 10 ¶ 35 and Aplt. App. at 42). She said would return in summer to teach online, as she had done for the last several years (Aplt. App. at 10 ¶ 35; Aplt. App. at 42; and Aplt. App. at 78), and that she would be back full time in the summer semester at the latest (Aplt. App. at 11 ¶ 42 and Aplt. App. at 78). Counsel's statements to the contrary are wrong. They were wrong when they were presented to the district court and they are wrong as they are now presented, uncorrected, to this Court. Counsel is obligated to review the record and correct his mistakes. In the meantime, Hwang is "otherwise qualified," as she alleged in her complaint and this is an improper question for a motion to dismiss.

### b.  Hwang plausibly pled adverse action because all of the actions she alleges resulted in a significant change in her employment status.

This Circuit liberally defines the phrase "adverse employment action," but has not identified a bright line rule as to what constitutes an "adverse employment action."  *Anderson v. Coors Brewing Co.,* 181 F.3d 1171, 1178 (10th Cir. 1999).  Instead, courts in this Circuit *take* an individual approach in determining whether an employment action is adverse.  *Id.*  But, regardless, any acts which constitute a significant change in employment status, such as hiring, firing, or a significant change of benefits will be considered "adverse."  *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1040 (10th Cir. 2011).

Here, Hwang  alleges that that the University failed to provide her shared or extended leave, forced her to be terminated, and deprived her of her COBRA benefits plausibly alleges adverse action.  It is plausible that it would be an adverse action for an employer to cancel the health insurance of its employee who is  a single mother with leukemia (Aplt. App. at 12 ¶ 52; 11 ¶ 49); it is plausible that it would be an adverse action to give that same employee one week to decide which method of termination she prefers (Aplt. App. at 11 ¶ 45); it is plausible that it would be an adverse action to force that employee to resign and then refuse to hire or even interview her for two open positions for which she is qualified.  (Aplt. App. at 11 ¶ 45; Aplt. App. at 11 ¶ 47; Aplt. App. at 12 ¶ 57 through 13 ¶ 59; and Aplt. App. at 13 ¶ 62-64).  It is plausible that all of these actions are adverse.  Hwang has successfully pled adverse employment action.

### c.  Hwang plausibly pled that she was discriminated against because of her disability through  direct evidence

The final element in a disability discrimination charge is causation.  At trial Hwang must prove that the University took its adverse action were because of her disability.  If a plaintiff is able to produce direct evidence of discrimination, she may prevail, even at summary judgment without proving all the elements of a prima facie case.  *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 511 (2002).  "Direct evidence is evidence, which if believed, proves the existence of a fact in issue without inference or presumption*." Hall v. U.S. Dep't of Labor*, 476 F.3d 847, 854 (10th Cir.2007).

In the context of employment law "[d]irect evidence [is that which] demonstrates on its face that the employment decision was reached for discriminatory reasons." *Danville v. Reg'l Lab Corp.,* 292 F.3d 1246, 1249 (10th Cir.2002).  And a plaintiff can prove discrimination through direct evidence by establishing proof of "an existing policy which itself constitutes discrimination."  *Ramsey v. City & County of Denver,* 907 F.2d 1004, 1008 (10th Cir. 1990).

In this case, the University admits that it has an existing policy of inflexible leave.  As Tolar admits in her e-mail, University policy is that after an employee exhausts six months of shared leave, the only options open to that employee require termination.  (Aplt. App. at 11 ¶ 45 and Aplt. App. at 44).  This policy is discriminatory on its face because it has an exclusionary effect on persons with disabilities.  (See attached supporting EEOC Enforcement Guidance: Reasonable Accommodation at "Leave" (page

18

11 ¶ 17)).  Hwang has plausibly alleged direct evidence of discrimination and has

established a prima facie case.  The district court erred in dismissing her complaint.

### 4. Hwang plausibly plead her retaliation claim because she established a prima facie case.

To establish a prima facie case of retaliation, a plaintiff must show that:  (1) she

engaged in a protected activity; (2) she was subjected to adverse employment action

subsequent to or with the protected activity; and (3) a causal connection between the

protected activity and the adverse employment action.  *Anderson v. Coors Brewing Co.*,

181 F.3d 1171, 1178 (10th Cir. 1999).[6]

Here, Hwang alleges that she requested the accommodation of extended leave on

February 11, 2010. (Aplt. App. at 11 ¶ 42 and Aplt. App. at 42).  Requesting reasonable

accommodation is a protected activity under the Rehabilitation Act.  *Jones v. U.P.S., Inc.,*

502 F.3d 1176, 1194 (10th Cir. 2007).  On February 19, 2010, she was subject to the

adverse actions of being denied leave and being forced to resign.  (Aplt. App. at 44).  On

or before March 1, 2010, her health insurance was cancelled and she was denied COBRA

benefits.  (Aplt. App. at 12 ¶ 52).

A retaliatory motive may be inferred when an adverse action closely follows

protected activity.  *Anderson v. Coors Brewing Co.,* 181 F.3d 1171, 1179 (10th Cir.

1999).  Here, the adverse actions happened approximately eight days after the protected

activity in the first case, and less than a month, in the other.  (Aplt. App. at 11 ¶ 42; Aplt.

App. at 42; and Aplt. App. at 12 ¶ 52).  Court has held that temporal proximity of one and

---

[6] Definitions and requirements for adverse employment action and causal connection are the same for retaliation as described for discrimination above.

one-half months is, on its own, sufficient to establish causation. *Ramirez v. Oklahoma Dep't of Mental Health*, 41 F.3d 584, 596 (10th Cir. 1994) (overruled on other grounds).

Hwang alleges that on March 8, 2010, she filed an internal discrimination complaint. (Aplt. App. at 13 ¶ 60). Filing discrimination complaint is protected activity. On March 2, 2010, Hwang alleges that she applied for an open position for which she was qualified. (Aplt. App. at 12 ¶ 57). Hwang was neither interviewed nor hired for the position. (Aplt. App. at 12 ¶ 58). It is plausible that the University made its hiring decision sometime after March 8th, when Hwang filed her discrimination complaint. (Aplt. App. at 13 ¶ 60). Hwang has alleged a prima facie case of retaliation and the district court erred in dismissing her claims.

**II.    The district court erred in dismissing Hwang's complaint because it used the under the wrong legal standard, disregarded Hwang's factual allegations, construed them in the light most favorable to the University, an considered facts outside the complaint.**

**A. The district court construed arguments against Hwang and in favor of the University.**

**1. Denial of COBRA rights**

The district court rejected Hwang's discrimination and retaliation claims in regard to denial of insurance/COBRA benefits based purely on the court's own theories and arguments despite the fact that the University failed to raise a single issue or offer a single argument on the subject. (Aplt. App. at 123; Aplt. App. at 124; and Aplt. App. at 126).

In *Monaco v. Quest Diagnostics, Inc.,* an employment discrimination case which is unpublished, but persuasive, the defendant failed to identify the legal standard and

offered no legal analysis as to why it contended that the plaintiff failed to establish causation.  The Court stated it would  not construct legal arguments or theories on behalf of the  defendant.  *Monaco v. Quest Diagnostics, Inc.,* 08-2500-KHV, 2010 WL 3843622 (D. Kan. Sept. 24, 2010).  Neither here, should the district court be advocating for the University.

### 2.  Failure to hire

The district court rejected Hwang's discrimination claims based on failure to hire because, "there are numerous reasons independent of her disability that KSU may have declined to consider Hwang for these positions."  (Aplt. App. at 125).  The Court declined to identify any of these reasons.  Neither did the University offer a reason.  The court rejected Hwang's charges based on an affirmative defense of its own making.  And even if the University had properly raised its own defense, it would be improper to dismiss Hwang's charges before summary judgment and before the University even provides an answer to the complaint.

### 3.  The district court disregarded Hwang's well pled allegations

#### a.  COBRA

The district court rejected Hwang's allegations in regard to denial of her COBRA rights and cancellation of her health insurance.  (Aplt. App. at 127).  In doing so, the Court found that other than "Other than her conclusary allegation that that KSU denied COBRA benefits due to Hwang's disability, Hwang has not provided any detail about the termination of her medical insurance."  (Aplt. App. at 123).  The district court ignored Hwang's 15 separate factual allegations concerning her the termination of her health

insurance and the denial of COBRA benefits (Aplt. App. at 10 ¶¶ 39-40; Aplt. App. at 11 ¶ 45; Aplt. App. at 11 ¶ 48; Aplt. App. at 12 ¶¶ 52-54; Aplt. App. at 14 ¶¶ 71-72; Aplt. App. at 15 ¶¶ 91-93; and Aplt. App. at 16 ¶¶ 104-106), including the following:

Shortly after her bone marrow transplant Hwang asked for extended leave, but the University told her that since she took the alleged maximum 6 months of share leave, she had two choices.  She could have unpaid "leave" and be terminated with no pay or benefits or she could accept LTD and be terminated with minimal benefits.  The university told her that if she did not accept the  LTD  option and termination, that she would be responsible to paying for her own health insurance (Aplt. App. at 11 ¶ 48), as a single mother of two, in treatment for cancer she had no choice but to accept LTD, which she did.  (Aplt. App. at 11 ¶ 49).  Seven days later, when Hwang attempted to receive her chemotherapy treatment, she physician's office informed her that her insurance had been cancelled.  (Aplt. App. at 12 ¶ 52).

The University knew of Hwang's condition and her need for medical treatment, but failed to inform her of her COBRA rights or give her notice that it planned to cancel her insurance.  (Aplt. App. at 12 ¶ 53).  That same day, her doctor sent a letter to the university about its abrupt cancellation of her health insurance.  (Aplt. App. at 12 ¶ 54; and Aplt. App. at 78).  Cobra is a mandated benefit offered to all employees.  (Aplt. App. at 14 ¶ 71).  Hwang was denied these benefits.  (Aplt. App. at 14 ¶ 72; Aplt. App. at 15 ¶¶ 91-93; Aplt. App. at 16 ¶¶ 104-108).

In the face of these allegations, the district court's conclusion that Hwang failed to provide "any detail" indicated that it either ignored Ms. Hwang's factual allegations or

22

considered them conclusary.  *Iqbal, 129 S.Ct. at 1949.*  Neither approach is permissible.  *Twombly* , at 569 n.14.  To the extent that the district court ignored Hwang's allegations, it was in error, because her complaint must be read "as a whole," with all allegations taken into account.  *Braden v. Wal-Mart Stores, Inc.* 588 F.3d 585, 594 (8th Cir. 2009).  The district court was not free to ignore any of Hwang's alleged facts.  *Merritt v. Fogel*, 349 F.App'x 742, 746(3d Cir. 2009) (district court erred in ignoring alleged facts).

If the district court disregarded Hwang's supporting facts as "conclusary," it also erred.  An allegation is conclusary only if it states a "legal conclusion" devoid of facts or is a formulaic recitation of an element of the plaintiff's claim.  *Iqbal,* 129 S.Ct. at 1949, 1951.  Hwang's allegations are not mere parroting of the elements of her claim, but are specific, factual allegations detailing the nature of her claims.

### b.  Extended/Shared Leave

The district court rejected Hwang's discrimination and failure to accommodate claims based on the University's denial of shared or extended leave.  Here, the court found that the decision not to allow Hwang extended leave "was not an act of discrimination, but compliance with a state regulation."  (Aplt. App. at 114-115 and Aplt. App. at 124).  First of all, the defendant offered no testimony that the reason Hwang was forced to resign was compliance with a regulation.  Defense counsel made some mention of LTD rules, but the defendant offered no evidence whatsoever.

Second, and most significant, in dismissing Hwang's complaint, the court addressed only one type of accommodation that Hwang requested.  The court ignored Hwang's allegations that she asked for shared leave, unpaid leave, or any leave that

23

would allow her to keep her job.  (Aplt. App. at 11 ¶ 43).  In disregarding these allegations, the court disregarded the most significant allegations in Hwang's complaint.

### 4. The district court either did not accept as true or construed Hwang's factual allegations in the light most favorable to the University.

#### a.  Health insurance and  COBRA Rights

In rejecting Hwang's claims based on denial of COBRA rights the district court stated that, "from the record, it appears that Hwang was informed that acceptance of LTD benefits would require her to pay her own insurance premiums to maintain insurance." Based on that understanding the court concluded that it "*must assume* that any denial of COBRA benefits was not an act of discrimination but merely the result of *Hwang's* decision to accept LTD."  (emphasis added) (Aplt. App. at 123).

The district court declined to explain which part of the record it relied on in coming to this conclusion, but for these purposes, it is immaterial.  In order to make such an assumption, the court would have had to disregard or not have considered as true, Hwang's numerous allegations that this was *not* a decision made of her own free will. Accepting LTD was a "Hobson's Choice;" she was going to be terminated either way. (Aplt. App. at 11 ¶¶ 42-43; Aplt. App. at 11 ¶ 45 through 12 ¶ 50; Aplt. App. at 15 ¶ 86-87; Aplt. App. at 42; Aplt. App. at 47).

The court would further have to assume that the University had a legitimate purpose for cancelling Hwang's health insurance just eight days after her termination, when it promised that she would continue to have health benefits.  Regardless of whether the court disregarded or disbelieved Hwang's allegations, it erred; because either way, it

failed to assume the truth of Hwang's well-pleaded facts and view them in the light most favorable to her. This is what the law requires. *Swanson v. Bixler,* 750 F.2d. 810 (10th Cir. 1984). The district court should be reversed.

### b. Extended/Shared Leave

The district court dismissed Hwang's disparate treatment claims based on denial of extended leave reasoning that, Hwang was offered unpaid leave but *chose* to accept LTD benefits. To make this assumption, the court must ignore a fundamental argument of Hwang's complaint. That is – she was *never* offered extended leave, she was offered *forever leave*. The Court disregards that the "*unpaid leave*" was an illusion. Hwang would be effectively terminated immediately if she accepted unpaid leave. There was nothing voluntary about Hwang's acceptance of LTD. For the court to conclude that there was, it would have had to ignore Hwang's factual allegations and construe others in the light most favorable to the University. The Court's dismissal must be reversed.

### 5. The Court applied the wrong legal standard.

### a. COBRA and Shared/Extended

In dismissing Hwang's retaliation claims based on denial of insurance benefits and COBRA rights, the district court determined that "Hwang bears the burden of establishing a prima facie case." (Aplt. App. at 126 and Aplt. App. at 127). This is an incorrect statement of law. A plaintiff is required to establish a prima facie case at summary judgment not at the motion to dismiss stage. The prima facie case, as applied to Rehabilitation Act claims, "is an evidentiary standard, not a pleading requirement."

*Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 510.  Hwang's pleadings satisfy this standard.  This Court should reverse the district court's dismissal.

## CONCLUSION

Ms. Hwang's complaint satisfies all of the standards of Rule 8.  Arguably, it satisfies the requirements to overcome summary judgment.  The University has done everything possible to avoid answering to its behavior and Hwang is already prejudiced by the unnecessary delay in discovery.  The district court decision would require a plaintiff to prove her case on her pleadings and goes beyond anything anticipated by the Supreme Court or any of the circuit courts in the country.  The district court must be reversed.

## STATEMENT OF COUNSEL AS TO ORAL ARGUMENT

Plaintiff- Appellant, Grace Hwang respectfully requests oral argument because this case raises important questions about the ability of employment discrimination plaintiff's access justice in federal courts and Counsel believes oral argument may be helpful to the Court.

**Respectfully submitted,**

**LEEDS LAW, LLC**

By: *s/Luanne Leeds*
LUANNE LEEDS**, #22774
515 SW Horne, Suite 201
Topeka, KS 66606
(785) 354-0727
FAX (785) 354-0736
leedslua@gmail.com
*Attorney for the Appellant/Plaintiff*

26

## <u>CERTIFICATE OF DIGITAL SUBMISSION</u>

I hereby certify that a copy of the foregoing **Appellant's Opening Brief**, as submitted in Digital Form via the Court's ECF system, is an exact copy of the written document filed with the Clerk and has been scanned for viruses with ESET NOD 2 v. 4.2.40.0 and, according to the program, it is free of viruses. In addition, I certify that all required privacy redactions have been made.

*s/Luanne Leeds*
**LUANNE LEEDS**, #22774

## <u>CERTIFICATE OF COMPLIANCE</u>

As required by Fed. R. App. P. 32(a)(7)(c), I certify that this brief is proportionally spaced and contains **7,246** words. I relied on my word processor, Microsoft Word 2010, to obtain the count.

I certify that the information on this form is true and correct to the best of my knowledge and belief formed after a reasonable inquiry.

*s/Luanne Leeds*
**LUANNE LEEDS**, #22774

27

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of July, 2013, the above and foregoing was electronically filed with the clerk of the court by using the CM/ECF system, which will send notice of electronic filing to the following:

Peter J. Paukstelis, #17482
petepauk@ksu.edu
*Attorney for Appellee/Defendant*

 *s/Luanne Leeds*
**LUANNE LEEDS**, #22774

28