**CASE NO. 13-3070**

IN THE UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

| | |
|---|---|
| GRACE HWANG, | ) |
| | ) |
| Appellant/Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| KANSAS STATE UNIVERSITY, | ) |
| | ) |
| Appellee/Defendant. | ) |

_____

On Appeal from the United States District Court
For the District of Kansas
The Honorable Judge Eric F. Melgren
District Court No. 11-CV-04185-EFM

_____

**ANSWER BRIEF OF APPELLEE**
_____

Respectfully submitted,

Peter J. Paukstelis
ATTORNEY FOR APPELLEE
Kansas State University
Office of General Counsel
111 Anderson Hall
Manhattan, KS   66506-0115
(785) 532-5730

Oral Argument is not requested.

August 8, 2013

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................iv

PRIOR OR RELATED APPEALS ............................................................ vii

INTRODUCTION ........................................................................................1

STATEMENT OF THE ISSUES..................................................................1

STATEMENT OF THE CASE .....................................................................2

STATEMENT OF FACTS ...........................................................................2

STATEMENT OF STANDARD OF REVIEW ............................................6

SUMMARY OF THE ARGUMENT ...........................................................6

ARGUMENT ...............................................................................................7

    I.     The legal standards for a motion to dismiss..........................................7

    II.    The District Court correctly determined that Hwang did not allege plausible claims. ...................................................................................9

        A. Hwang did not allege plausible facts for a disability discrimination claim. ............................................................................................10

            1. Hwang failed to allege a plausible claim regarding COBRA/insurance benefits......................................................11

            2. Hwang failed to allege a plausible claim regarding "shared leave"...........................................................................................12

            3. Hwang failed to allege a plausible claim regarding the two positions. ..................................................................................14

        B. The District Court correctly dismissed the failure to accommodate claims. ............................................................................................15

i

C. The District Court correctly focused on lack of any causal connection in determining that Hwang did not allege a plausible retaliation claim..............................................................................18

D. Hwang did not plausibly allege a disparate treatment claim. ........21

III.    By misrepresenting and ignoring the text of her First Amended Complaint and the documents related to it, Hwang shows that she has not alleged plausible claims. ..............................................................22

A. Hwang misrepresents her February 11, 2010and February 20, 2010 emails to Dr. Tolar. .......................................................................22

B. Hwang engages in misrepresenting other allegations...................23

IV.    Additional reasons support the District Court's dismissal of Hwang's claims under Section 504 of the RA. ...................................................25

A. KSU did not engage in an adverse action on account of a disability ..........................................................................................26

1.  Hwang's resignation was not an adverse action by KSU. ........26

2.  Hwang was not constructively discharged................................27

B. Hwang is not "otherwise qualified" under Section 504................29

1.  Hwang does not allege and cannot plausibly claim that she could perform the essential functions of her job. .....................30

2.  Hwang's alleged request for leave without pay did not meet the requirements of a "reasonable accommodation" because it was indefinite. ................................................................................30

3.  Hwang rendered herself "not qualified" by rejecting the accommodation she allegedly requested from KSU................32

CONCLUSION.........................................................................................33

STATEMENT OF COUNSEL AS TO ORAL ARGUMENT ................................34

CERTIFICATE OF DIGITAL SUBMISSION ........................................................34

CERTIFICATION OF COMPLIANCE WITH RULE 32(a).................................35

CERTIFICATE OF SERVICE .................................................................................35

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal*
        556 U.S. 662, 129 S. Ct. 1937 (2009) .........................................7, 8, 9, 14, 19

*Aquilino v. University of Kansas,*
        268 F.3d 930 (10th Cir. 2001) .......................................................................26

*Bell Atlantic Corp. v. Twombly,*
        550 U.S. 544, 127 S. Ct. 1955(2007) .....................................................7, 8, 19

*Board of Trustees of the University of Alabama v. Garrett,*
        531 U.S. 356, 121 S. Ct. 955 (2001) ............................................................31

*Brady v. UBS Financial Services, Inc.,*
        538 F.3d 1319 (10th Cir. 2008) ....................................................................25

*Brockman v. Wyoming Dept. of Family Services,*
        342 F.3d 1159 (10th Cir. 2003) ...............................................................29, 30

*Burlington Indus., Inc. v. Ellerth,*
        524 U.S. 742, 118 S. Ct. 2257 (1998) ..........................................................26

*Chan v. Sprint Corp.,*
        351 F.Supp.2d 1197 (D. Kan. 2005) ............................................................33

*Cisneros v. Wilson,*
        226 F.3d 1113 (10th Cir. 2000) ....................................................................31

*Cohon ex. rel. Bass v. New Mexico Dept. Of Health,*
        646 F.3d 717 (10th Cir. 2011) .........................................................2, 3, 11, 17

*EEOC v. C.R. England, Inc.,*
        644 F.3d 1028 (10th Cir. 2011) ....................................................................18

*Exum v. U.S. Olympic Comm.,*
        389 F.3d 1130 (10th Cir. 2004) ....................................................................28

*Fischer v. Forestwood Company, Inc.,*
    525 F.3d 972 (10th Cir. 2008) ......................................................27

*Garrett v. Hewlett-Packard Co.,*
    305 F.3d 1210 (10th Cir. 2002) ..................................................28

*Hennagir v. Utah Dep't of Corrections,*
    587 F.3d 1255 (10th Cir. 2009) ..................................................18

*Kansas Penn Gaming, LLC v. Collins,*
    656 F.3d 1210 (10th Cir. 2011) ..................................7, 8, 9, 15, 19

*Khalik v. United Air Lines,*
    671 F.3d 1188 (10th Cir. 2012) ..........................................8, 9, 18

*MacKenzie v. City & County of Denver,*
    414 F.3d 1266 (10th Cir. 2005) ..................................................28

*Pace v. Swerdlow,*
    519 F.3d 1067 (10th Cir. 2008) ....................................................9

*Ridge at Red Hawk, L.L.C. v. Schneider,*
    493 F.3d 1174 (10th Cir. 2007) ....................................................7

*Robbins v. Oklahoma*,
    519 F.3d 1242 (10th Cir. 2008) ................................................8, 9

*Sanchez v. Denver Pub. Sch.,*
    164 F.3d 527 (10th Cir. 1998) ....................................................26

*Smith v. Blue Cross Blue Shield of Kansas, Inc.,*
    102 F.3d 1075 (10th Cir. 1996) ..................................................31

*Toone v. Wells Fargo Bank, N.A.,*
    716 F.3d 516 (10th Cir. 2013) ................................................6, 16

*Willett v. State of Kansas,*
    942 F. Supp. 1387 (D. Kan. 1996) ..............................................33

*Woodman v. Runyon,*
    132 F.3d 1330 (10th Cir. 1997) ..........................................................................9

## STATUTES/REGULATIONS

29 U.S.C. § 794 ..............................................................................................1, 10

29 U.S.C. § 1166 ................................................................................................12

29 C.F.R. § 1630.9 .......................................................................................18, 32

K.A.R. 1-9-23 ...................................................................................................3, 13

## OTHER AUTHORITIES

Fed. R. Civ. P. 8 ................................................................................................14

# PRIOR OR RELATED APPEALS

None.

# INTRODUCTION

Grace Hwang ("Hwang") knowingly and voluntarily resigned her employment at Kansas State University ("KSU") to receive long-term disability ("LTD") benefits.  Having made that decision – which she describes in her First Amended Complaint – she cannot plausibly claim that KSU failed to accommodate her, retaliated against her, or discriminated against her in violation of Section 504 of the Rehabilitation Act.[1]  After amending her Complaint, Hwang fails to allege facts that plausibly support her claims.  Indeed, she alleges facts that undermine her claims.  Consequently, Hwang fails to state a claim upon which relief can be granted, and this Court should affirm the District Court's dismissal of her case.

# STATEMENT OF ISSUES

1.      Did the District Court correctly determine that Hwang's First Amended Complaint does not allege plausible claims?

2.      Did KSU engage in an "adverse action" because Hwang decided to resign her position to accept LTD benefits?

3.      Was Hwang "otherwise qualified" for her position when she was unable to attend work and she rejected KSU's offer of additional leave without pay?

---

[1] 29 U.S.C. § 794.

1

## STATEMENT OF THE CASE

KSU adds to Hwang's Statement of the Case only to point out that Hwang made substantive changes to specific allegations between the Complaint and the First Amended Complaint.[2]

## STATEMENT OF FACTS

KSU submits its own Statement of Facts because, as discussed below in Sections II.B. and III, in arguing this appeal Hwang has added new allegations or mischaracterized the allegations in her First Amended Complaint. Because this Court only reviews the sufficiency of the complaint, it is not obliged to consider new allegations made on appeal.[3]

Hwang was employed at KSU as an assistant professor in the Department of Leadership Studies.[4] She was diagnosed with leukemia in June 2009.[5] Due to treatments involving chemotherapy and a bone marrow transplant, Hwang took more than six months off from work.[6] Hwang had accumulated only two months

---

[2] The original Complaint is submitted as Aplee. Supp. App. at 6. Hwang added the words "accommodation and" to paragraph 40 of the Complaint. The result is paragraph 43 of the First Amended Complaint (Aplt. App. at 11, ¶ 43).

[3] *Cohon ex. rel. Bass v. New Mexico Dept. of Health*, 646 F.3d 717, 730 (10th Cir. 2011) (rejecting an appellant's attempt in a Section 504 case to inject allegations not made in complaint).

[4] Aplt. App. at 8, ¶ 13.

[5] Aplt. App. at 8, ¶ 20.

[6] Aplt. App. at 8, ¶¶ 21-23.

of paid leave to apply to her absence.[7]  To make up the difference, she applied for – and received – the maximum of six months of paid leave under a KSU policy allowed by the State of Kansas called "shared leave."[8]  KSU provided two instructors to cover the three classes Hwang was scheduled to teach.[9]

In December 2009, Hwang applied for LTD benefits.[10]  Hwang was notified on February 10, 2010, that she was approved for LTD, and that under that program she would be responsible for paying her own health insurance premiums.[11]  Hwang also learned on February 10 that to accept LTD, she would have to resign her employment.[12]

On February 11, 2010, Hwang emailed several members of her department, including her department head and supervisor, Dr. Mary Tolar ("Dr. Tolar").[13]  Hwang asked for further verification about whether she would have to pay for health insurance, and whether her position would end if she accepted LTD.[14]

---

[7] Aplt. App. at 9, ¶ 24.
[8] *See* K.A.R. 1-9-23(g)(1)("The maximum number of hours of shared leave that may be used by an employee shall be the total hours that the employee would regularly be scheduled to work during a six-month period.").
[9] Aplt. App. at 9, ¶ 28.
[10] Aplt. App. at 10, ¶ 38.
[11] Aplt. App. at 10, ¶ 40.
[12] Aplt. App. at 10, ¶ 41.
[13] Aplt. App. at 11, ¶ 42; see also February 11, 2010 email from Hwang to Dr. Tolar (Aplt. App. at 42).  On a motion to dismiss, courts may consider "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Cohon*, 646 F.3d at 724.
[14] Aplt. App. at 42, ¶¶ 1-3.

3

Hwang asked Dr. Tolar:  "So I guess my question is whether this is all true or whether we can label my absence this semester as 'Leave without Pay' or something else, so I don't have to go through re-applying for my old job back, for lower pay."[15]  Hwang sought to label her absence – she did not ask for an accommodation to continue working.[16]  At best, she appeared to be asking for an accommodation of "Leave without Pay" to keep her position.[17]  She also expressed that she might not be able to return to work in the summer as she had originally hoped.[18]

Dr. Tolar responded by email on February 19, 2010.[19]  Dr. Tolar pointed out that Hwang actually had two options: (1) accept LTD (60 percent of her salary and benefits) but terminate her University employment as required by the Kansas Public Employee Retirement System's ("KPERS"); or (2) remain a University employee and go on leave without pay for up to four more months.[20]  Dr. Tolar also told Hwang that (like under LTD) she would be responsible for her health insurance premiums if she went on leave without pay.[21]  Dr. Tolar offered

---

[15] Aplt. App. at 42, ¶ 3.

[16] Aplt. App. at 42.

[17] Aplt. App. at 42, ¶ 3.

[18] Aplt. App. at 42, ¶ 4.

[19] Aplt. App. at 11, ¶ 46-47; see also February 19, 2010 email from Dr. Tolar to Hwang (Aplt. App. at 44-45).

[20] Aplt. App. at 44, ¶¶ 2-3.

[21] Aplt. App. at 44, ¶ 3.

additional persons and resources if Hwang needed further clarifications or
information.[22]

Hwang responded by email either that day or the next day, February 20.[23]
She stated: "I don't really have many choices here. So the Long-Term Disability
is what I will proceed with. This is my Notice to Ms. Harvey that I will proceed
with that."[24] Hwang also tossed out some dates she might be able to work again –
August 1 or maybe June 12 – but that she would need to check with her doctors
first.[25] Hwang closed by thanking Dr. Tolar for "checking up on my very limited
options."[26] Hwang did not inquire in her email about other options or
accommodations to work during the spring semester, or suggest that Dr. Tolar
failed to consider any such options or accommodations.[27]

Stephanie Harvey ("Harvey"), the benefits administrator at KSU, followed
up on Hwang's decision by writing to her on February 22, 2010.[28] Harvey
explained that Hwang had been approved for LTD under KPERS' program, and

---

[22] Aplt. App. at 44, ¶ 4.
[23] Aplt. App. at 12, ¶ 50; see also February 20, 2010 email from Hwang to Dr.
Tolar (Aplt. App. 47-49). The email referenced in the First Amended Complaint is
the one received by Dr. Tolar on February 20, 2010. Although irrelevant for the
purposes of this appeal, either the date stated in the First Amended Complaint is
incorrect, or the email was sent on one day and received on another.
[24] Aplt. App. at 47.
[25] Aplt. App. at 47.
[26] Aplt. App. at 47.
[27] Aplt. App. at 47.
[28] Aplt. App. at 12, ¶ 51; February 22, 2010 letter from Harvey to Hwang (Aplt.
App. at 51-55).

she enclosed a copy of the PER-39 form showing that Hwang had separated her employment from KSU by resignation for health reasons – LTD.[29]

## STATEMENT OF STANDARD OF REVIEW

This Court reviews *de novo* the grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim.[30]

## SUMMARY OF THE ARGUMENT

The District Court correctly determined that Hwang did not allege plausible claims in her First Amended Complaint. She failed to allege plausible disability discrimination under Section 504 of the Rehabilitation Act regarding COBRA/insurance benefits, the "shared leave" program that was only available for six months under Kansas law, or the two positions she later sought.

Hwang also failed to allege a plausible failure-to-accommodate claim, and she fabricates new, unsupported "facts" contradicted by the underlying emails in a futile effort to support this claim. Similarly, she pleads no facts to establish a plausible connection between protected activity and alleged retaliation, or any facts to support a disparate treatment claim.

Hwang's lack of plausible factual allegations are so glaring that she resorts to creating new allegations or misrepresenting ones from her First Amended Complaint.

---

[29] Aplt. App. at 51, ¶ 1 and PER-39 attachment (Aplt. App. at 54).
[30] *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 520 (10th Cir. 2013).

Finally, although not referenced by the District Court, Hwang's decision to accept LTD benefits and resign was neither an adverse action by KSU nor a constructive discharge, and Hwang was not "otherwise qualified" for her position at KSU.  Consequently, she is unable to state a claim under the Section 504 of the Rehabilitation Act.

## <u>ARGUMENT</u>

## I.      **The legal standards for a motion to dismiss.**

The Supreme Court has clarified the standards for deciding a motion to dismiss in *Ashcroft v. Iqbal*[31] and *Bell Atlantic Corp. v. Twombly*.[32]  "To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face'".[33]  "[T]he mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."[34]  "Thus, mere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must

---

[31] 556 U.S. 662, 129 S. Ct. 1937 (2009).
[32] 550 U.S. 544, 127 S. Ct. 1955  (2007).
[33] *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (*quoting Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974).
[34] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (italics in original omitted).

offer specific factual allegations to support each claim."[35]  Although pleading

every element of a *prima facie* case is not necessarily required, courts must

examine the elements to determine whether claims are "plausible."[36]

      In making specific factual allegations, a plaintiff must nudge her claims

from "conceivable to plausible" to survive a motion to dismiss.[37]  "Plausibility"

references the scope of allegations in a complaint:  "if they are so general that they

encompass a wide swath of conduct, much of it innocent, then the plaintiffs have

not nudged their claims across the line from conceivable to plausible."[38]  In

making this determination, a court must draw on its judicial experience and

common sense.[39]  And "[t]he nature and specificity of the allegations required to

state a plausible claim will vary based on context."[40]

      All well-pleaded facts in the complaint are assumed to be true and are

viewed in the light most favorable to the plaintiff, but conclusory allegations need

---

[35] *Kansas Penn*, 656 F.3d at 1214 (*quoting Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965).

[36] *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012).

[37] *Khalik*, 671 F.3d at 1190 (*citing Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974).

[38] *Khalik*, 671 F.3d at 1191 (internal quotations omitted)(*citing Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)).

[39] *Kansas Penn*, 656 F.3d at 1214 (*quoting Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950).

[40] *Kansas Penn*, 656 F.3d at 1215.

not be considered.[41]  This includes legal conclusions that have been couched as
factual allegations.[42]

     "This pleading requirement serves two purposes: 'to ensure that a defendant
is placed on notice of his or her alleged misconduct sufficient to prepare an
appropriate defense, and to avoid ginning up the costly machinery associated with
our civil discovery regime on the basis of a largely groundless claim.'"[43]

     Lastly, this Court should be aware that cases decided under section 504 of
the Rehabilitation Act are applicable to cases brought under the ADA and vice
versa.[44]

## II.    The District Court correctly determined that Hwang did not allege plausible claims.

     The District Court's opinion correctly focused on the "plausibility"
requirements of *Iqbal* and *Twombly* to determine that Hwang did not plausibly
plead her claims.  Under that standard, if allegations "are so general that they
encompass a wide swath of conduct, much of it innocent, then the plaintiffs have
not nudged their claims across the line from conceivable to plausible."[45]

---

[41] *Id. (quoting Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949).
[42] *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949-50.
[43] *Kansas Penn*, 656 F.3d at 1215 (*quoting Pace v. Swerdlow*, 519 F.3d 1067, 1076 (10th Cir. 2008)).
[44] *See Woodman v. Runyon*, 132 F.3d 1330, 1339 n. 8 (10th Cir. 1997).
[45] *Khalik*, 671 F.3d at 1191 (internal quotations omitted)(*citing Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)).

Hwang pleads considerable factual background about herself, her illness, and the difficult decision she made regarding her employment, but she offers no facts suggesting that KSU's conduct was anything other than innocent. The allegations in the First Amended Complaint suggest that KSU treated her like an employee who chose to accept LTD benefits and resign her employment. Because she chose LTD benefits knowing that her employment would end and KSU would stop paying for her insurance coverage, Hwang must allege more than innocent conduct and speculative legal conclusions. As explained in the District Court's opinion, she did not do so.

### A.    Hwang did not allege plausible facts for a disability discrimination claim.

The District Court correctly determined that Hwang did not state a claim of disability discrimination under Section 504 of the Rehabilitation Act[46] ("RA") regarding her health insurance/COBRA benefits, the end of her "shared leave" benefits, or the two positions for which she later applied. A Section 504 claim requires a plaintiff to show that: (1) she is disabled under the RA; (2) she is "otherwise qualified" to perform, with or without reasonable accommodation, the essential functions of her position; (3) she was discriminated against solely by

---

[46] 29 U.S.C. § 794.

reason of her disability; and (4) the program or activity in question receives federal

financial assistance.[47]

### 1.    Hwang failed to allege a plausible claim regarding COBRA/insurance benefits.

The District Court determined that, "[o]ther than the conclusory allegation

that KSU denied COBRA benefits due to Hwang's disability, Hwang has not

provided any detail about the termination of her medical insurance."[48]  Hwang now

claims that she has fifteen different factual allegations regarding COBRA

benefits,[49] but most of those "allegations" are the same legal conclusion – that she

was denied COBRA benefits.  None of those allegations explain how her disability

was KSU's sole reason for ending its payments for her health insurance (rather

than her resignation to accept LTD benefits).  None of the allegations even claim

that she was legally entitled to have KSU continue paying for her health insurance

after the date of her resignation.  Instead, her allegations support that KSU acted

innocently in taking the same steps it takes when any employee resigns.  Therefore,

these allegations do not support a plausible claim, because they are so general that

they encompass a wide swath of conduct.

Her allegations not only encompass a wide swath of innocent conduct, they

actually show the opposite of Hwang's desired conclusion.  Hwang pleaded that

---

[47] *Cohon*, 646 F.3d at 725.
[48] Aplt. App. at 123.
[49] Appellant's Opening Brief ("Aplt. Opening Brief") at 21-22.

she was notified on February 10, 2010, that she would have to resign and would be responsible for paying her own health insurance if she accepted LTD benefits.[50] She pleaded that she was again informed on February 19, 2010, that she would have to resign and pay her own health insurance if she accepted LTD benefits.[51] Thus, knowing that her employment and health insurance would end, she chose to accept LTD benefits on February 20, 2010.[52]  Consequently, having pled the facts that undermine her own theory, she does not allege a plausible claim.

Finally, Hwang falsely alleges that KSU "failed to inform her of her COBRA rights."[53]  As noted in KSU's Motion for Sanctions, the plan administrator notified Hwang of her COBRA rights less than thirty (30) days from her resignation,[54] which took plan in less time than KSU was required to notify the plan administrator.[55]  Hwang received notice of her COBRA rights as required by law.

### 2.    Hwang failed to allege a plausible claim regarding "shared leave."

Because Kansas regulations prohibit KSU (as a state agency) from giving more than six months of paid leave under the "shared leave" program, the District

---

[50] Aplt. App. at 10, ¶ 40.
[51] Aplt. App. at 11, ¶ 45.
[52] Aplt. App. at 12, ¶ 50; Aplt. App. at 47.
[53] Aplt. Opening Brief at 22; Aplt. App. at 12, ¶ 53.
[54] KSU's Motion for Sanctions (filed contemporaneously with this brief).
[55] 29 U.S.C. § 1166(a).

Court correctly determined that Hwang's exhaustion of that program (she received the maximum benefit available) was not discriminatory.[56]  Additionally, KSU's compliance with state regulations is not disability discrimination, particularly when access to the program in the first place is limited to situations involving serious, extreme, or life-threatening conditions.[57]

Hwang now attempts to argue that limiting the shared leave program to six months is somehow "direct evidence" of an inflexible leave policy that then requires termination,[58] but this argument fails for numerous reasons.  First, Hwang offers no allegations in the First Amended Complaint that the six month limitation of the shared leave program discriminates against disabled persons.  Second, qualifying for the program at all requires a very serious health situation.[59]  Third, Hwang herself pled that Dr. Tolar offered her an additional four months of leave without pay,[60] showing that the shared leave program does not require an inflexible termination of employees.  Fourth, as the District Court correctly analyzed, the Kansas regulation is facially neutral.[61]  Thus, this new claim lacks plausibility

---

[56] Aplt. App. at 124; see K.A.R. 1-9-23(g)(1)("The maximum number of hours of shared leave that may be used by an employee shall be the total hours that the employee would regularly be scheduled to work during a six-month period.").
[57] K.A.R. 1-9-23(a)(2)(A).
[58] Aplt. Opening Brief at 18.
[59] K.A.R. 1-9-23(a)(2)(A).
[60] Aplt. App. at 11, ¶ 45; Aplt. App. at 44.
[61] Aplt. App. at 124-25.

because Hwang did not allege it in her First Amendment Complaint, and her alleged facts completely undermine any such conclusion.

### 3.   Hwang failed to allege a plausible claim regarding the two positions.

Hwang offers no allegation to suggest that disability discrimination is more than a hypothetical possibility, and as with her other claims, the District Court correctly determined that Hwang failed to allege facts that would nudge her failure-to-hire claims from "conceivable" to "plausible."  As the Supreme Court has stated, "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"[62]

When Hwang applied for the community relations position on March 2, 2010, she had just been approved for, and accepted, LTD benefits (which necessarily requires a showing of inability to work).  She does not allege what the essential functions of the job were, or how she could have performed those essential functions with or without an accommodation.  She does not allege that she met the stated qualifications for the position.  She does not allege that she was equally or more qualified than the person who was offered the position (and in fact includes no allegations regarding the successful candidate, other than her former

---

[62] *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

state of residence).[63]  She does not allege that the decisionmaker knew about her

disability.  And perhaps most importantly, she offers no facts to plausibly infer that

KSU took an adverse action solely because of her disability.

She also offers none of these fundamental allegations with respect to the

Interim Associate Provost for International Studies position.

Conclusory statements and legal conclusions, like those made by Hwang

here, cannot be used to survive a motion to dismiss.[64]

### B.    The District Court correctly dismissed the failure to accommodate claims.

The District Court correctly determined that Hwang failed to state a claim

regarding extended/shared leave and failing to consider other accommodations

because: (1) KSU's compliance with state regulations was not discriminatory; and

(2) Hwang could not plausibly articulate the alleged illegal conduct by referencing

unspecified accommodations.[65]

Although Hwang tries to claim that she requested extensive

accommodations,[66] these allegations do not appear in the First Amended

Complaint or the February 11, 2010 email that Hwang sent to Dr. Tolar.  When a

court reviews documents referred to in a complaint that are central to a plaintiff's

---

[63] Aplt. App. at 13, ¶ 59.

[64] *Kansas Penn*, 656 F.3d at 1214.

[65] Aplt. App. at 126.

[66] Aplt. Opening Brief at 14-15, 23-24.

claims and the parties do not dispute authenticity, the court examines the document itself, rather than the complaint's description of it.[67] This is an exception to general rule about accepting well-pleaded allegations as true in the Rule 12(b)(6) context.[68]

Here, Hwang invents allegations that are absent from her First Amended Complaint and are also contrary to the underlying documents. The only allegation regarding a request for accommodation is Paragraph 43: "In that same email, Ms. Hwang asked that she be allowed some kind of accommodation and leave so that she would not be terminated."[69] The "email" Hwang references is her February 11, 2010 email to Dr. Tolar, in which only one sentence – with very generous inferences – might relate to a single accommodation: "So I guess my question is whether this is all true or whether we can label my absence this semester as "Leave without Pay" or something else, so I don't have to go through re-applying for my old job back, for lower pay."[70] Hwang herself makes it clear that she will not return to work and that – at best – the only accommodation she might be seeking is to label her inevitable absence from work a "Leave without Pay."

From this single sentence in an email, Hwang has now invented new facts, which this Court cannot consider:

---

[67] *Toone*, 716 F.3d at 521.
[68] *Id.*
[69] Aplt. App. at 11, ¶ 43.
[70] Aplt. App. at 42.

- "Hwang asks Tolar if she has any other options (that would not require termination)."[71]

- "Hwang further alleged she would have been able to perform all of the essential functions of her job, if she had an accommodation that would allow her to remain off campus until the end of the spring semester."[72]

- "Hwang presented the University with a variety of options for accommodation including: shared leave until the end of the summer semester, or until the end of the spring semester with online teaching in the summer, or leave without pay with the same two durational options. Hwang also suggested temporary online teaching duties, or any other accommodation that would allow her [sic] remain off campus until she could safely return at the end of the spring semester."[73]

- "The court ignored Hwang's allegations that she asked for shared leave, unpaid leave, or any leave that would allow her to keep her job."[74]

Because this Court only reviews the sufficiency of the complaint, it is not obliged to consider new allegations made on appeal.[75]

Furthermore, Hwang's email on February 20, 2010 makes no mention of any request for accommodation to continue working in February, March, April, or May 2010, nor does it mention Dr. Tolar's failure to discuss such an accommodation.[76] Thus, even if Hwang had actually pled these allegations, her own emails completely undercut the plausibility of any claim that Hwang was seeking multiple

---

[71] Aplt. Opening Brief at 6.
[72] Aplt. Opening Brief at 14-15.
[73] Aplt. Opening Brief at 15 (internal parentheticals omitted).
[74] Aplt. Opening Brief at 23-24.
[75] *Cohon*, 646 F.3d at 730.
[76] Aplt. App. at 47.

accommodations.  And of course, KSU actually offered Hwang an additional four months of leave without pay.[77]  Hwang rejected that accommodation, instead choosing LTD benefits.[78]  As discussed more fully below, Hwang's rejection of a reasonable accommodation makes her "not qualified" under the RA and also prevents Hwang from stating a claim.[79]

### C.   The District Court correctly focused on lack of any causal connection in determining that Hwang did not allege a plausible retaliation claim.

As with her other claims, the District Court recognized that Hwang failed to nudge her retaliation claims from "conceivable" to "plausible."  To state a prima facie case of retaliation,[80] Hwang must plausibly allege facts that show: (1) that she engaged in protected opposition to discrimination; (2) that a reasonable employee would have found the challenged action materially adverse; and (3) that a causal connection existed between the protected activity and the materially adverse action.[81]

---

[77] Aplt. App. at 11, ¶ 45; Aplt. App. at 44.

[78] Aplt. App. at 12, ¶ 50; Aplt. App. at 47.

[79] See 29 C.F.R. § 1630.9(d).

[80] Courts examine the elements of a cause of action to determine whether a plaintiff has alleged plausible claims.  *Khalik*, 671 F.3d at 1192.

[81] *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1051 (10th Cir. 2011); *Hennagir v. Utah Dep't of Corrections*, 587 F.3d 1255, 1265 (10th Cir. 2009).

As noted above, context is critical for determining plausibility,[82] and "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."[83]  The District Court recognized that, in the context of this case, Hwang cannot plead that she chose to accept LTD benefits – knowing that she would resign her position and that her health insurance benefits would end – and then claim that losing her health benefits supports a plausible retaliation claim.  Hwang even alleges that she knew on February 10, 2010 (before she sent her email on February 11) that she would lose her KSU-provided health insurance if she accepted LTD benefits.[84]  And Hwang offers no allegations that KSU treated her differently from every other employee who resigns his or her employment.  Without this, there is no connection or causation sufficient to state a retaliation claim.  When Hwang's own First Amended Complaint describes her resignation of employment, it does not require Solomonic common sense or judicial experience to appreciate the natural consequences of Hwang's decision, including the discontinuation of her employer-provided health insurance.  Her claim is simply not plausible.

---

[82] *Kansas Penn*, 656 F.3d at 1215.
[83] *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (*quoting Twombly*, 550 U.S. at 557, 127 S. Ct. at 1966)(internal quotations omitted).
[84] Aplt. App. at 10, ¶ 40.

Similarly, Hwang offers no facts to suggest a causal connection between her internal disability discrimination complaint and KSU not hiring her for the community relations position. And she actually alleges facts that undermine her claim, as she applied for the community relations position on or about March 2, 2010 (and knew she did not meet the application criteria shortly thereafter),[85] but she did not submit her internal disability discrimination complaint until March 8.[86] While it is sometimes possible to infer a causal connection based on temporal proximity, Hwang's failure to allege that the hiring decision was made after the protected activity – or that the decisionmaker even had knowledge of her disability discrimination complaint – prevents use of this inference.

The District Court also recognized that Hwang alleges no causal connection regarding her internal disability discrimination complaint and KSU's not hiring her for the Interim Associate Provost for International Programs position. KSU resolved her internal complaint on or about May 18, 2010.[87] More than a year later – June 24, 2011 – she applied for the Interim Associate Provost position.[88] Again, there is no temporal proximity, and Hwang offers no facts to establish a plausible causal connection.

---

[85] Aplt. App. at 12, ¶ 57.
[86] Aplt. App. at 13, ¶ 60.
[87] Aplt. App. at 13, ¶ 61.
[88] Aplt. App. at 13, ¶ 62.

**D.    Hwang did not plausibly allege a disparate treatment claim.**

Just as Hwang's other claims lack plausibility, the District Court correctly

determined that the conclusory, non-specific allegations in her disparate treatment

claim failed to demonstrate plausibility.  It noted that: (1) Hwang took leave in

excess of six months; (2) she had not alleged that she was eligible for a sabbatical;

(3) she was told that she would be responsible for her own health insurance

payments; (4) she received the maximum shared leave permitted under Kansas

law; and (5) she did not allege facts that nondisabled (former) employees are

treated differently than disabled (former) employees who receive LTD benefits.[89]

Hwang essentially concedes all of these points in her Opening Brief, taking

issue only with the Court's statement that Hwang *chose* to accept LTD benefits.[90]

While the District Court clearly sympathized with the difficult medical situation

Hwang found herself in February 2010, the Court could not avoid the only

conclusion possible from Hwang's First Amended Complaint and her February 20

email:  that she chose LTD benefits and resignation as the lesser of two evils.[91]

While Hwang may not be happy that LTD and resignation was the best option for

her, her unhappiness alone does not state a plausible disparate treatment claim.

---

[89] Aplt. App. at 128-29.
[90] Aplt. Opening Brief at 25.
[91] Aplt. App. at 12, ¶ 50; Aplt. App. at 47.

**III.    By misrepresenting and ignoring the text of her First Amended Complaint and the documents related to it, Hwang shows that she has not alleged plausible claims.**

Hwang appears to understand that she has not alleged plausible claims in her First Amended Complaint.  Therefore, to induce this Court into thinking she has moved her claims from conceivable to plausible, Hwang tortures and contorts the allegations in her First Amended Complaint.  And she even goes so far as to allege new facts in her brief when neither the First Amended Complaint nor the underlying documents support those allegations.

**A.    Hwang misrepresents her February 11, 2010 and February 20, 2010  emails to Dr. Tolar.**

As discussed above in Section II.B., Hwang's single worst attempt to rewrite the actual allegations of her First Amended Complaint is her misrepresentation of the extent of "accommodation" she requested.  On appeal, she claims she requested a whole host of accommodations, which is not only a misrepresentation of her First Amended Complaint, but also her own February 11, 2010 email that underlies the allegation.  It is likewise noteworthy that even though Hwang edited her Complaint with the addition of the word "accommodation" in the First Amended Complaint,[92] she alleged nothing more than a legal conclusion, provided no substantive facts to support the allegations, and now greatly exaggerates the facts for this Court in a manner clearly contrary to the underlying email.  She now relies

---

[92] Compare Aplt. App. at 11, ¶ 43 and Aplee. Supp. App. at 10, ¶ 40.

on this wide range of fabricated allegations that do not exist in the First Amended Complaint, despite the fact that she did not bother to add any such allegations nor provide any substantive facts regarding "accommodations" when she amended her Complaint. This misrepresentation and failure to amend with any substantive facts, despite being given the opportunity to amend that very allegation, glaringly demonstrates the First Amended Complaint's lack of plausibility.

### B. Hwang engages in misrepresenting other allegations.

Hwang tries to create other new allegations or embellish allegations in her First Amended Complaint to make them look better. A representative list includes the following:

- Hwang tries to expand an allegation to include doctor's advice about staying off campus until the end of the spring semester and rebuilding her immune system,[93] which were not included her First Amended Complaint.[94]

- Hwang claims that she told Dr. Tolar that "at most" she would need leave through the spring semester.[95] Her allegation in her First Amended Complaint only says that she told Dr. Tolar that she needed additional leave, "perhaps through the spring semester".[96] This statement is also contradicted by her emails to Dr. Tolar that list potential return dates of June 23 (preventing summer work), August 1, and June 12.[97]

---

[93] Aplt. Opening Brief at 5.
[94] Aplt. App. at 10, ¶ 34.
[95] App. Opening Brief at 5.
[96] Aplt. App. at 10, ¶ 35.
[97] Aplt. App. at 42 and 47.

- Hwang states that Dr. Tolar's email offered her two choices, both of which would result in termination[98] and that she would be "terminated immediately" if she accepted unpaid leave.[99]  These statements are contradicted by the actual text of Dr. Tolar's email, which explains that Hwang would not be terminated if she opted for leave without pay and that she could continue as a KSU employee on leave without pay through June 12, 2010.[100]

- Hwang represents that Dr. McGuirk said she could "return to work,"[101] but she conveniently omits that she was not able to return to work immediately.  She was not able to return until the end of the spring semester.[102]  And of course, Hwang had already resigned before Dr. McGuirk sent his March 1, 2010 letter.

- Hwang claims that she "clearly defined the duration of her impairment".[103]  This statement is contradicted by her emails to Dr. Tolar that list potential return dates of June 23 (preventing summer work), August 1, and June 12.[104]  Even as she was choosing LTD benefits and resignation, Hwang's February 20, 2010 email shows that she was uncertain about when she might have returned to work.[105]

- Hwang includes reference to an old EEOC Enforcement Guideline,[106] which she did not plead, which was not part of the record below, which has no relevance, and which this Court should disregard.

- Hwang asserts that KSU failed to inform her of her COBRA rights,[107] which is false.[108]

---

[98] Aplt. Opening Brief at 6.
[99] Aplt. Opening Brief at 25.
[100] Aplt. App. at 44.
[101] Aplt. Opening Brief at 8.
[102] Aplt. App. at 78.
[103] Aplt. Opening Brief at 16.
[104] Aplt. App. at 42 and 47.
[105] Aplt. App. at 47.
[106] Aplt. Opening Brief at 18.
[107] Aplt. Opening Brief at 22.
[108] See KSU's Motion for Sanctions.

- Hwang claims that she had no notice that her health insurance benefits would end,[109] and that KSU "promised that she would continue to have health benefits,"[110] which are contradicted by her own allegations that she received notice on February 10 and February 19, 2010 that her health insurance benefits would end.[111] Hwang's latter statement also has no reference to, and is unsupported by, the record below.

Hwang has not alleged plausible claims, and her attempts to rewrite and embellish her First Amended Complaint in her Opening Brief show how implausible her actual allegations are.

## IV. Additional reasons support the District Court's dismissal of Hwang's claims under Section 504 of the RA.

In addition to those reasons discussed by the District Court, this Court has additional bases for affirming the District Court. This court may affirm for any reason supported by the record, but not relied on by the District Court.[112] Although KSU advanced several additional reasons for dismissal in its briefing below,[113] the District Court determined that resolving them was not necessary to grant KSU's motion to dismiss. These reasons also show that Hwang's Section 504 claims fail as a matter of law.

---

[109] Aplt. Opening Brief at 22.
[110] Aplt. Opening Brief at 24.
[111] Aplt. App. at 10, ¶ 40 and 11, ¶¶ 44-45.
[112] *Brady v. UBS Financial Services, Inc.*, 538 F.3d 1319, 1327 (10th Cir. 2008).
[113] Aplt. App. at 26-33.

A.    **KSU did not engage in an adverse action on account of a disability.**

Hwang cannot establish the third element of a Section 504 claim – an adverse action on account of her disability – for two additional reasons: (1) Hwang, and not KSU, decided to resign her employment to accept LTD; and (2) Hwang has not pled and cannot plausibly allege that she was constructively discharged.

1.    **Hwang's resignation was not an adverse action by KSU.**

Because KSU did not take an adverse action against Hwang, she cannot establish the third element of a Section 504 claim. "The Supreme Court has explained that '[a] tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'"[114]  Although the Tenth Circuit liberally defines adverse employment action, it still must be done on a case-by-case basis after examining the unique factors relevant to the situation at hand.[115]

Here the facts are that Hwang gave notice that she would accept LTD benefits, knowing that those benefits would require her resignation from KSU.  An

---

[114] *Aquilino v. University of Kansas*, 268 F.3d 930, 934 (10th Cir. 2001) (*quoting Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S. Ct. 2257 (1998)).
[115] *Id.* (internal quotations omitted) (citing *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 532 (10th Cir. 1998)).

employee's decision to resign, even under unpleasant circumstances, does not create an actual discharge.[116]  As noted above, she was told on February 10 and February 19 that accepting LTD meant that she would resign her employment.[117]  She appreciated that consequence enough to send an email on February 11 asking if it was true.[118]  Knowing that her employment would end, she chose LTD.[119]  KSU then followed through on her decision, sending her the notice of separation because of her resignation for health reasons – LTD.[120]  The other consequences of her decision, such as no longer having KSU-provided health insurance, stemmed directly from her decision to resign and accept LTD.  Consequently, KSU did not take an adverse action regarding Hwang's separation from employment.

### 2.    Hwang was not constructively discharged.

Knowing that she was not discharged by KSU, Hwang tries to pose her resignation as a "constructive discharge,"[121] which is neither supported by requisite factual allegations nor remotely plausible.  An employee is constructively discharged "when an employer deliberately makes or allows the employee's

---

[116] *Fischer v. Forestwood Company, Inc.*, 525 F.3d 972, 979-80 (10th Cir. 2008) ("…because Fischer chose to resign rather than work for a company he believed had wronged [his fellow employee], we agree with the district court that he was not actually discharged.")
[117] Aplt. App. at 10, ¶¶ 41, 44-45; Aplt. App. at 44.
[118] Aplt. App. at 11, ¶ 42-43; Aplt. App. at 42.
[119] Aplt. App. at 12, ¶ 50; Aplt. App. at 47.
[120] Aplt. App. at 54.
[121] Aplt. App. at 15, ¶ 87.

working conditions to become so intolerable that the employee has no other choice but to quit."[122]  Courts "evaluate the voluntariness of an employee's resignation under an objective, totality of the circumstances standard."[123]  The constructive discharge "bar is quite high."[124]  "The question is not whether working conditions . . . were difficult or unpleasant."[125]  Instead, "a plaintiff must show he had no other choice but to quit."[126]

Hwang did not have to quit due to the intolerability of her working conditions, and she did not ever allege that they were intolerable.  Instead, the only facts show that Hwang had two options: accept LTD (which provides 60 percent of her pay and benefits) and resign, or remain an employee and go on leave without pay.[127]  Under either choice, applicable rules required her to pay her own health insurance.[128]

Neither of these choices is objectively intolerable.  Hwang knew she could have remained an employee by selecting leave without pay, which is a frequent employment status in the employment world.  She discussed calling her absence a "leave without pay," and KSU offered her that as an option.  Instead, she

---

[122] *MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1281 (10th Cir. 2005).
[123] *Id.*
[124] *Garrett v. Hewlett-Packard Co.,* 305 F.3d 1210, 1221 (10th Cir. 2002).
[125] *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1135 (10th Cir. 2004) (quotation omitted).
[126] *Garrett*, 305 F.3d at 1221.
[127] Aplt. App. at 11, ¶ 45.
[128] Aplt. App. at 10-11, ¶¶ 40, 48.

voluntarily made a rational choice to take the better of the two options, even though she knew it required her resignation.

**B.     Hwang is not "otherwise qualified" under Section 504.**

Even if Hwang could establish that KSU had taken an adverse action, she would still be unable to meet the second element of a Section 504 discrimination claim: that she is "otherwise qualified."  Hwang is not "otherwise qualified" because: (1) she could not perform the essential functions of her job; (2) indefinite leave is not a reasonable accommodation; and (3) by rejecting a reasonable accommodation offered by KSU, Hwang rendered herself unqualified as a matter of law.

Courts have broken the "otherwise qualified" analysis into a two-part test: (1) whether the individual can perform the essential functions of the job; and (2) if not, whether a reasonable accommodation would allow the individual to perform those essential functions.[129]  The relevant time period for that analysis is when the alleged adverse action occurred.[130]  Other than an impermissibly conclusory statement that she is a qualified individual under the RA,[131] Hwang offers no factual allegations from which this Court could plausibly conclude that she was

---

[129] *Brockman v. Wyoming Dept. of Family Services*, 342 F.3d 1159, 1168 (10th Cir. 2003).
[130] *Id.*
[131] Aplt. App. at 6, ¶ 2.

capable of doing her job with or without an accommodation at the time she resigned from KSU (February 21, 2010).

> **1.** **Hwang does not allege and cannot plausibly claim that she could perform the essential functions of her job.**

Even though Hwang does not allege what her essential job functions were, or that she was capable of performing them on February 21, 2010, it is quite evident from the First Amended Complaint that she was not able to perform the most essential function – attendance – in teaching her three classes. "Attendance is generally an essential function of any job."[132] Hwang was an assistant professor, teaching classes in KSU's classrooms.[133] She was highly involved with her students.[134] She was not able to come to campus because of her compromised immune system.[135] Because she could not come to campus to attend her classes, Hwang's own allegations demonstrate that she was unable to perform her job's essential functions.

> **2.** **Hwang's alleged request for leave without pay did not meet the requirements of a "reasonable accommodation" because it was indefinite.**

The second half of the "otherwise qualified" analysis requires Hwang to allege plausible facts that demonstrate she could have performed the essential

---

[132] *Brockman*, 342 F.3d at 1168.
[133] Aplt. App. at 8, ¶ 13, 16; Aplt. App. at 9, ¶ 28; Aplt App. at 10, ¶ 34.
[134] Aplt. App. at 8, ¶ 16.
[135] Aplt. App. at 7, ¶ 8 and Aplt. App. at 10, ¶ 34.

functions of her position with or without a reasonable accommodation. A

"reasonable accommodation" is one which presently, or in the near future, enables

an employee to perform the essential functions of her job.[136] A leave may

constitute a reasonable accommodation, as it may allow an employee to recover

from an injury or illness.[137] But to make a reasonable leave request, the Tenth

Circuit has required employees to provide an expected duration of the

impairment.[138] "Without an expected duration of an impairment, an employer

cannot determine whether an employee will be able to perform the essential

functions of the job *in the near future* and therefore whether the leave of absence is

a 'reasonable' accommodation."[139] An employer is not required to wait

indefinitely for an employee to recover.[140]

Given that she was unable to come to work at KSU because of her

compromised immune system, it appears that the only possible accommodation for

Hwang on February 21, 2010 was a further leave of absence (and Dr. Tolar offered

her an additional four months of leave without pay)[141]. Hwang had been off work

---

[136] *Cisneros v. Wilson*, 226 F.3d 1113, 1129 (10th Cir. 2000) (*overruled on other grounds, Board of Trustees of the University of Alabama v. Garrett,* 531 U.S. 356, 121 S. Ct. 955 (2001)).
[137] *Id.*
[138] *Id.* at 1130.
[139] *Id.* (emphasis in original).
[140] *Smith v. Blue Cross Blue Shield of Kansas, Inc.*, 102 F.3d 1075, 1077 (10th Cir. 1996).
[141] Aplt. App. at 44, ¶ 2.

and on leave since June 2009.[142]  She mentioned leave on February 11, 2010,

asking whether her absence could be considered leave without pay, but she

expressed reservations about how soon she could return to work.[143]  And if her

return to work was not indefinite enough, her February 20, 2010 email threw out

two dates (August 1 and June 12) when she might be able to work again, but that

she would still need to check with her doctors.[144]

Because Hwang did not provide an expected duration of impairment (and

indeed, indicated she could not provide an expected duration of impairment), her

request for leave was indefinite as of her resignation date (February 21, 2010) and

therefore was not a "reasonable" accommodation.

### 3.    Hwang rendered herself "not qualified" by rejecting the accommodation she allegedly requested from KSU.

Even though Hwang's alleged request for leave was not a legally

"reasonable" accommodation, KSU offered her four additional months of leave

without pay anyway.[145]  An individual who rejects a reasonable accommodation

will not be considered "qualified."[146]  Thus, even if this Court were to assume that

---

[142] Aplt. App. at 8, ¶¶ 20-23.

[143] Aplt. App. at 42, ¶¶ 3-4.

[144] Aplt. App. at 47.

[145] Aplt. App. at 44, ¶ 2.

[146] *See* 29 C.F.R. § 1630.9(d) ("[I]f such individual rejects a reasonable accommodation, aid, service, opportunity or benefit that is necessary to enable the individual to perform the essential functions of the position held or desired, and cannot, as a result of that rejection, perform the essential functions of the position,

four more months of leave was reasonable (in addition to the nearly eight months of leave Hwang had already received as of February 21, 2010), Hwang's rejection of that leave offer makes her not "otherwise qualified" as a matter of law. Consequently, she cannot fulfill the second element of a Section 504 discrimination claim.

## CONCLUSION

KSU did not create Hwang's difficult health situation.  It presented her with options and opportunities: giving her six months of paid leave, offering her four more months of additional unpaid leave, and providing LTD insurance.  She, not KSU, made the decision to resign and collect LTD benefits.  But now Hwang seems to blame KSU for her difficult situation – and perhaps for the choice she made – but those are neither KSU's fault nor the result of any unlawful conduct. And they most certainly do not establish a plausible claim for disability discrimination or retaliation.

This Court should affirm the District Court.

---

the individual will not be considered qualified."); *accord Chan v. Sprint Corp.*, 351 F. Supp. 2d 1197, 1208 (D. Kan. 2005) and *Willett v. State of Kansas*, 942 F. Supp. 1387, 1395 (D. Kan. 1996).

## <u>STATEMENT OF COUNSEL AS TO ORAL ARGUMENT</u>

Appellee/Defendant does not request oral argument.

Respectfully submitted,

By: /s/ Peter J. Paukstelis____
Peter J. Paukstelis
Associate General Counsel and
Special Assistant Attorney General
Kansas State University
111 Anderson Hall
(785) 532-5730 -- phone
(785) 532-5603 -- fax
petepauk@ksu.edu
Attorney for Appellee
Kansas State University

## <u>CERTIFICATE OF DIGITAL SUBMISSION<br>AND PRIVACY REDACTIONS</u>

I hereby certify that a copy of the foregoing **ANSWER BRIEF OF APPELLEES** as submitted in Digital Form via the court's ECP system, is an exact copy of the written document filed with the Clerk and has been scanned for viruses with the Trend MicroOffice Scan, and, according to the program, is free of viruses. In addition, I certify all required privacy redactions have been made.

By:     /s/  Peter J. Paukstelis
        Associate General Counsel
        Kansas State University

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

1.  This brief contains 9,296 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), and I relied upon my word processor, Microsoft Word 2007, to obtain the count.

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in 14-point Times New Roman.

By:    /s/  Peter J. Paukstelis
Associate General Counsel
Kansas State University

## <u>CERTIFICATE OF SERVICE</u>

THIS IS TO CERTIFY that on the 8th day of August, 2013, the above and foregoing was electronically filed with the clerk of the court by using the CM-ECF system, which will send notice of electronic filing to the following:   Luanne Leeds, leedslua@gmail.com, Attorney for Appellant.

By /s/ Peter J. Paukstelis
Peter J. Paukstelis