IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

GRACE HWANG,                                  )
       Appellant/Petitioner,      )
                         )
v.                                            )
                         )
                         )     Case No.: 13-3070
                         )
KANSAS STATE UNIVERSITY,                      )
       Appellee/Respondent.       )
                         )

---

Appeal from the United States District Court
for the District of Kansas
The Honorable Eric F. Melgren
District court No. 11-CV-04185-EFM

---

APPELLANT'S REPLY BRIEF

---

Respectfully Submitted,

LUANNE C. LEEDS

LEEDS LAW, LLC

515 SW Horne Street, Suite 201

TOPEKA, KS 66606

PHONE:     785-354-0727

Fax:          785-354-0736

Oral Argument is requested.

September 12, 2013

# **<u>TABLE OF CONTENTS</u>**

Table of Authorities................................................................................................iii

Argument ........................................................................................................... 2

    A.    KSU has not demonstrated that Hwang's Discrimination claims are implausible.2

    B.    Improper Standard.................................................................................. 3

    C.    KSU ignores Hwang's arguments, allegations, and the record. ......................... 15

    D.    Hwang did not "render herself not qualified"..................................... 16

    E.    KSU's accusations of dishonesty...................................................... 17

Conclusion ........................................................................................................ 18

Certificate of Digital Submission ..................................................................... 19

Certificate of Compliance.................................................................................. 20

Certificate of Service ........................................................................................ 21

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009)............................................................. 2

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)........................................... 1, 3

*Erickson v. Pardus,* 551 U.S. 89 (2007)........................................................... 1

*Kansas Penn Gaming, LLC v. Collins,* 656 F.3d 1210 (10th Cir. 2011)........................ 3, 4

*Mink v. Suthers*, 482 F.3d 1244 (10th Cir.2007) ............................................... 5

*Smith v. Midland Brake, Inc.,* 180 F.3d at 1154 (10th Cir. 1999) ...................................... 12

*Smith v. United States*, 561 F.3d 1090 (10th Cir. 2009)...................................... 1

**STATUTES**

42 U.S.C. § 12116 .................................................................................... 12

Fed. R. Civ. P. 8....................................................................................... 18

Fed. R. Civ. P. 8(a)(2) ............................................................................ 1

29 C.F.R. ¶ 1630.1-.16 ............................................................................ 12

This case is about whether Kansas State University ("KSU") failed to grant or even consider *any* accommodation at all that would allow Grace Hwang to continue her employment when she needed extended leave because of a bone marrow transplant. It is about whether the university discriminated against Grace Hwang because of her disability when the only two "accommodations" they offered her required that she lose her job. Further, it is about whether the University retaliated against Hwang when it cancelled her health insurance without notice when it knew she was in the middle of chemotherapy, when it failed to even interview her for any full time job for which she applied and was qualified, and whether Hwang was treated less favorably because of her disability.

This appeal is about whether Ms. Hwang sufficiently pled these in her Rehabilitation Act discrimination complaint and whether the trial court was mistaken when it dismissed her complaint. To survive dismissal, Hwang had merely to satisfy the modest and familiar requirements of Fed. R. Civ. P. 8(a)(2), requiring only a short and plain statement of the facts showing that she is entitled to relief, giving air notice of the claims and the grounds upon which they rest.[1] In other words, she only had to state enough facts for her claims to be plausible.[2]

The Court reviews dismissal for failure to state a claim de novo, so it decides the issue under the same standards as above, accepting as true, all well-pleaded facts in the complaint, viewing them in the light most favorable to Hwang.[3] KSU has done nothing

---

[1] *Erickson v. Pardus,* 551 U.S. 89, 93 (2007), quoting *Twombly,* 550 U.S. at 555
[2] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)
[3] *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)

1

in its response to address this standard.  Rather than discuss the sufficiency of the facts

Hwang pleaded, KSU argues their truthfulness.  Sailing right past answer and discovery,

KSU wants to get right to summary judgment and argue the sufficiency of the evidence

but fails to address the relevant issue.  Is Hwang's complaint plausible on its face?[4]

The brief that KSU files contains much indignant rhetoric, but nothing to

demonstrate that Hwang's claims are implausible.  Its continual attack on the integrity of

Hwang and her counsel and its spurious accusations of dishonesty – at least thirteen times

throughout the brief[5] – not only detracts from the issues at hand, but the accusations are

groundless.  KSU mischaracterizes the record and Hwang's arguments, but it never offers

any alternative explanation for its conduct[6] and it never claims that it lacks adequate

notice about the claims being asserted.  Its arguments either ignore key allegations,

respond to those that were never made, or they are contrary to the law.

<u>**ARGUMENT**</u>

### A.  **KSU has not demonstrated that Hwang's Discrimination claims are implausible.**

KSU spends enormous amounts of time on the constitutionality of specific leave

policies, the intricacies of KPERS, and the plaintiff's alleged lying and fabrication, but

does not adequately address or refute the real issue, the adequacy of Hwang's complaint.

---

[4] Counsel failed to state the standard of review in her opening brief and offers apologies for the omission.  It appears to have been caused by operator error (counsel's) in transmitting various copies of the brief.  For this reason, the standard appears in the Reply brief.

[5] <u>See</u> Aplee. Answer Brief at 2,4, 6, 16, 17, 22, 23, 24 and 25.

[6] *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1951(2009)

**B. Improper Standard**

KSU improperly inflates Hwang's burden in stating that to survive a motion to dismiss "a plaintiff must offer specific factual allegations to support each claim."  (Aplee. Answer Brief at 8).  But in an employment discrimination case, specific facts are not necessary.[7]  A complaint need only give the defendant fair notice of the nature of the claim and the grounds upon which it rests – it must contain only enough facts to state a claim that is plausible.[8]

*Kansas Penn*[9] is the case which KSU relies upon for its "specific facts to support each claim" language (and which it cites extensively throughout its brief).  First, this case appears to inadvertently cite *Twombly*  for the above premise, but  as cited above *Twombly* stands for specific facts are *not* necessary, but just enough facts to state a plausible claim.  Second, and more importantly, *Kansas Penn*, is distinguishable.  It is a "class-of-one" equal protection case, which, not unlike fraud, requires a higher degree of pleading specificity. This Court has recognized that in such cases there is "a substantial burden that plaintiffs demonstrate others similarly situated in all material respects were treated differently and that there is no objectively reasonable basis for the defendant's

---

[7] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547(2007) (internal citations and quotations omitted)

[8] *Id.*

[9]  *Kansas Penn Gaming, LLC v. Collins,* 656 F.3d 1210, 1214 (10th Cir. 2011),  Defense counsel further confused the citation to say *quoting Twombly*, the Court did *not* quote *Twombly* , but merely cited it.  (Aplee. Answer Brief at 8, footnote 35).

action."[10]  This burden does not apply to a plaintiff in a Rehabilitation Act case at the pleading stage.[11]

   In order to cast doubt on Hwang's integrity, KSU first adds its own selective facts to Hwang's Statement of the case.  It claims  that is does this  "only to point out that Hwang made substantive changes to specific allegations between the Complaint and the Amended Complaint," (Aplee. Answer Brief at 2), as if there was something sinister afoot.  Then, again, in its discussion of Hwang's torturing, contorting misrepresentation and rewriting of the allegations, KSU finds it necessary to alert the Court to the fact that Hwang made additions to her amended complaint not present in the original.  (Aplee. Answer Brief at 22).  It turns out that these additions, and the "subtsantive changes" alluded to above consist of two words, "accommodation" and "and." (Aplee. Answer Brief at 22).

   First of all, the reason Hwang amended her complaint was to drop the State of Kansas from the suit once the undersigned was satisfied that the state was not a proper defendant.  This is the right thing for counsel to do under the circumstances, it prevents the "ginning up" of  litigation costs to which KSU refers in its earlier brief. (Aplee. Answer Brief at 9).

---

[10] *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1217 (10th Cir. 2011)(internal quotations and citations omitted).
[11] *Id.*  It is imperative for the class-of-one plaintiff to provide a specific and detailed account of the nature of the preferred treatment of the favored class.

Second, and more importantly**,** it is well established that an amended complaint supersedes the original complaint and renders the original complaint of no legal effect.[12] It makes no difference how many changes appear in the amended complaint, the original complaint is meaningless.  Parties often amend complaints to refine claims and allegations. The only reason for KSU to mention this subject so prominently is to cast aspersions, it has no relationship to the adequacy of the pleadings.

Allegations of dishonesty, such as this, appear continuously throughout KSU's brief.  Unfortunately, although it adds nothing to issue of the adequacy of Hwang's pleadings, the undersigned feels compelled to respond to the defendant's charges.  In the interest of efficiency, the allegations and responses (together with citations to the record) appear in the chart below:

| Appellee's Accusations | What Actually Happened |
|---|---|
| 1.  Hwang does not allege that she met the stated qualifications for the position. (Aplee. Answer Brief at 22) | Hwang cataloged her qualifications and credentials in a way that was more than sufficient for a pre-discovery complaint. (Aplt. App. at 7 ¶ 11; 8 ¶ 12-13, 15-16; 13 ¶ 63; 14 ¶ 76-77). |
| 2.  "Hwang's *single worst attempt* to rewrite the actual allegations of her First Amended Complaint is her *misrepresentation* of the extent of "accommodation" she requested. On appeal she claims she requested a whole host of accommodations, which is not only a *misrepresentation* of her First Amended Complaint, but also her own February 11, | Ms. Hwang asked for or discussed the following accommodations as supported by the record:<br><br>• Hwang explained that she intended to return for the summer semester and could *teach online* (she could avoid contact with students).  (Aplt. App. at 36). |

---

[12] *Mink v. Suthers*, 482 F.3d 1244, 1254 (10th Cir.2007).

5

| | |
|---|---|
| 2010 email that underlies the allegation. (Aplee. Answer Brief at 22).[13]<br><br>She now relies on this *wide range of fabricated allegations* that do not exist in the First Amended Complaint . . . This *misrepresentation* and failure to amend with any substantive facts, despite being given the opportunity to amend that very allegation, glaringly demonstrates the First Amended Complaint's lack of plausibility." (Aplee. Answer Brief at 23) | • Hwang was unconcerned about her need for extended leave as she was told that she had *one year of shared leave at her disposal*. (Aplt. App. at 10 ¶ 37).<br><br>• Hwang asked that she be allowed *some kind of accommodation and leave so that she would not be terminated.* (Aplt. App. at 11 ¶ 43).<br><br>• **Grace Hwang** (paraphrased): I was just told that accepting LTD means that I have no guarantee of getting my job back . . . HR director says she has never had anyone come back from LTD and get their job back . . . HR told me that you can open my position (at lower pay) to anyone after my shared leave ends and that my position will be terminated . . . *I was planning on teaching online this Summer, but under LTD I have to be out for 1 year [from the injury] so I can't come back until after June 23.*[14] When I do come back I will have to reapply for my job and compete with general public . . . **My question is whether this is all true or whether we can label my absence this semester [the Spring semester] as 'leave without pay' or something else, so I don't have to go through re-applying for my old job back, for lower pay.** (Aplt. App. at 42). |

---

[13] KSU discusses only one email, which it introduced to the district court. However there are two more emails in that string (Aplt. App. at 76), which, in the interests of full and fair disclosure, Hwang presented and the court considered. KSU fails to mention or account for these emails in its answer brief. They include a response from Hwang, and a further reply from Tolar. They contain the information and the allegations which KSU claims Hwang fabricated.

[14] Hwang had planned on teaching online for the summer semester which would not require personal student contact, but was initially told she could not come back within 1 year of her original leave. (Aplt. App. At 42).

- **Mary Tolar's Response** (paraphrased): *You sent an email inquiring as to whether LTD was your only option . . .* there are two options following the end of your shared leave. The first is LTD. It is true that to receive LTD benefits, KPERS requires termination. The second option would be continued leave without pay. Under this option you would have no LTD benefits and your employment would end on June 21, 2010, the last day of your current contract. Further you would be responsible for paying your own health insurance premiums beginning immediately, as your shared leave has been exhausted as of today.

  *Your shared leave ends tomorrow, so the purpose of this note is to inform you of your options – LTD or leave without pay.* If we don't hear from you by February 26, 2010, you will not receive LTD benefits, you will be responsible for your health insurance premiums, and your employment [leave without pay] will end with your current contract on June 12, 2010. (Aplt. App. at 47-49)

- **Hwang's Reply** (paraphrased): I really don't have many choices here, so I will proceed with LTD. *I was planning on coming back full time on August 1, 2010, but If I need to be back by June 12, 2010 due to the contract, I'll ask my doctors if I working from a computer at home is doable or I can also come in, since the building will not be fully occupied during the summer. It's all about building up my immune system.* Thanks for checking up on my very limited options.

- **Tolar's Response** (paraphrased*): I want*

| | *to be sure to clarify your expectations of employment . . .  LTD requires termination which has now occurred as of February 21, 2010.* My earlier reference to June, 2012, was the date that your contract was set to expire, not an indication that a new contract would be issued. Annual contracts carry no expectation of continued employment. No new contract is planned at this time.<br><br>When you are fully recovered and ready for full time employment  . . .  we will be happy to review our needs and resources at that time and see what is possible. |
|---|---|
| 3.  "Hwang *invented allegations* that are absent from her First Amended Complaint and are also contrary to underlying documents." (Aplee. Answer Brief at 16).[15] | •  Hwang did not "invent" any of the allegations for her appeal which were not present in her complaint.  In her complaint, Hwang alleges that asked for some kind of accommodation and leave so that she would not be terminated, and the documents referenced and provided to the district court above demonstrate the fact. (Aplt. App. at 11 ¶ 43 and Aplt. Opening Brief at 23-24).<br><br>•  Hwang asks that if it is true that the University will terminate her and make her apply for her job back if she takes her extended leave as LTD.  If it is true, *she asks if the University can label her leave as "leave without pay" or something else so that she doesn't have to re-apply for her job.*  Here, Hwang is asking for any option, any accommodation that will allow her to keep her job. (Aplt. App. at 42). |

---

[15] See Footnote 1, above.  This case has been ongoing since December 2011; however, not a single page of discovery has been exchanged, so Hwang is limited to the few documents that have been exchanged in the course of arguing KSU's Motion to Dismiss.

8

| | |
|---|---|
| | • In fact, the University knows this is what Hwang was asking because Tolar responded to that very request with the following: *"you sent an email inquiring as to whether LTD was your only option."* Tolar goes on to lay out Hwang's options –be terminated or be terminated. (Aplt. App. at 44-45) It is obvious here that Tolar understands that Hwang is asking for any accommodation possible.<br><br>• Hwang asked to teach online for the summer semester (as she had done in years past). (Aplt. App. at 42 and 76).<br><br>• Hwang offered to work in the building, as it would not be fully occupied during the summer. (Aplt. App. at 76). |
| 4.  Hwang *now* claims that she has fifteen different factual allegation regarding COBRA Benefits. (Aplee. Answer Brief at 19) | Hwang is not just *now* claiming she has these allegations, they all appear in her amended complaint and Hwang claimed that they were in regard to her health insurance *and* COBRA rights. (Aplt. Opening Brief at 21-22).<br><br>These allegations are *in her amended complaint,* not for the first time on appeal, as KSU implies. (Aplt. Opening Brief at 22; Aplt. App. at 10 ¶¶ 39-40; 11 ¶ 45; 11 ¶ 48; 12 ¶¶ 52-54; 14 ¶¶71-72; 15 ¶¶ 91-93; and 16 ¶¶104-106). |
| 5.  Hwang now attempts to argue that limiting the shared leave program is "direct evidence" of an inflexible leave policy. This fails because Hwang did not allege that the limitation discriminates against disabled people.  This New claim lacks plausibility. (Aplee. Answer Brief at 13). | Hwang is argues *no such thing.* Hwang's argument is that the University's *own* policy governing leave in general is direct evidence of discrimination.<br><br>"University policy is that after an employee exhausts six months of shared leave, the only options open to that employee require termination." (Aplt. Opening Brief at 18; Aplt. App. at 11 ¶ 45; and Aplt. App. at 44) (as per Mary Tolar)**.** |

| | This policy is discriminatory on its face because of it has an exclusionary effect on the disabled.<br><br>An employer *may not* apply a "no-fault" leave policy under which employees are automatically terminated after they have been on leave beyond a set period.  <u>See</u> Attachment to Aplt. Opening Brief, EEOC Guidance at 17 (page 11 of 39) - Modifying leave policies is a form of accommodation. |
|---|---|
| 6.  Hwang applied on March 2, 2010, and knew she didn't meet the criteria shortly thereafter. (Aplee. Opening Brief at 20) | This is incorrect. The University  cites to the record at Aplt. App. at 12 ¶ 57, for support.  This citation says no such thing.  In fact, *nowhere* in the record does it indicate that Hwang did not meet the criteria, let alone that she *knew* she didn't meet the criteria. |
| 7.   Hwang engages in misrepresenting other allegations. Hwang tries to create other new allegations or embellish allegations in her First Amended Complaint to make them look better.  A representative list includes the following:<br><br>   a)  Expanding an allegation to include doctor's advice about staying off campus until the end of the spring semester and rebuilding her immune system, which were not included in her First Amended Complaint. (Aplee. Answer Brief at 23). | "Due to a severe outbreak of H1N1 virus at the University, her physicians ordered that she take additional time away from the campus so as not to endanger her already compromised immune system." (Aplt. App. at 10 ¶ 34).<br><br>"Dr. McGuirk also notified the University that Ms. Hwang could return to her teaching duties for the summer semester teaching session and that she was in total remission from her leukemia."  (Aplt. App. at 12 ¶ 55). |

| | | |
|---|---|---|
| b) | Telling Dr. Tolar that "at most" she would need leave through spring semester, while the First Amended Complaint only says that Hwang needed additional leave, perhaps through the spring semester. (Aplee. Answer Brief at 23). | Hwang has never changed her allegation. At all times she expected to be back by the summer semester to teach online as she always had, which would not require student contact. The changing dates that are referred to are all connected with KSU imposed limitations because of Hwang's LTD. This issue is an issue to deal with at summary judgment; therefore, it is difficult to cite to the record the nuances necessary to understand this issue. |
| c) | Stating that Dr. Tolar's e-mail offered two choices, both of which would result in termination. These statements are contradicted by Tolar's email, which explains that Hwang would not be terminated if she opted for leave without pay. (Aplee. Brief at 24). | Dr. Tolar's e-mail specifically tells Hwang that if she accepts leave without pay that she will be terminated promptly on June 12, 2010, as soon as her annual contract expired. It is absurd to even contemplate that this illusory "leave" is continuing employment. (Aplt. App. at 44). |
| d) | Hwang represents that Dr. McGuirk said she could return to work, but omits that she was not able to return to work immediately. She was not able to return to work until the end of the spring semester. And Hwang had already resigned before Dr. McGuirk sent his March 1, 2010 letter. (Aplee. Brief at 24). | Hwang *was* available to return immediately. On March 1st, when this letter was written, the Spring semester was already well underway. It is plausible that Dr. McGuirk knew this when he sent this letter, it is plausible that he knew that Hwang's teaching duties were already covered, and that although he stated that she was in full remission, the doctor knew that Hwang would not have any work to go back to until the end of the semester so he authorized her to return to her online classes in the summer, then back to full time in-class teaching for the upcoming fall semester. (Aplt. App. at 78). Again, this is an issue for summary judgment. |
| e) | Claiming that she clearly defined the duration of her impairment. (Aplee. Brief at 24). | Hwang always maintained that she would be back full time teaching by August 1st. She was planning, and wanted to return and teach online for the summer semester. But she was told that to qualify for LTD until she returned in the summer, Hwang |

11

| | |
|---|---|
| | would be required to remain out of work through June 23rd.  (Aplt. App. at 42). This also, is an issue for summary judgment. KSU wishes to argue the truth of the facts. This is improper on a motion to dismiss. |
| f)  Hwang includes reference to an old EEOC Enforcement Guideline, which she did not plead, which was not part of the record below, which has no relevance, and which this Court should disregard. (Aplee. Brief at 24). | As counsel is surely aware, this is the most current EEOC Enforcement Guidance regarding accommodation.  The EEOC is authorized by 42 U.S.C. § 12116 to promulgate regulations to implement provisions of the ADA.  See 29 C.F.R. ¶ 1630.1-.16.  "Those regulations are entitled to a great deal of deference." *Smith v. Midland Brake, Inc.,* 180 F.3d at 1154, 1165 n. 5 (10th Cir. 1999). It was included as a secondary authority to the Court.  As such, it is proper and appropriate. |
| g)  Asserts that KSU failed to inform her of her COBRA rights, which is false. (Aplee. Brief at 24). | See Aplt. App. at 12 ¶ 53; and Exhibits A and B to Hwang's Response to KSU's Motion for Sanctions.  It is also important to note that KSU never even responded to the COBRA arguments in its reply brief on its motion to dismiss.  The issue was raised only by the district court. |
| h)  Claiming that she had no notice that her health insurance benefits would end, and that KSU promised that she would continue to have health benefits. (Aplee. Brief at 25). | See Aplt. App. at 12 ¶ 53; Exhibits A and B to Hwang's Response to KSU's Motion for Sanctions; and Aplt. App. at 44, wherein Dr. Tolar states that by accepting LTD, Hwang would be entitled to "60% of [her] salary plus benefits…"  Plus, she also states that if she did *not* accept LTD, "[she] would be responsible for paying [her] own health insurance premiums beginning immediately."  Hwang accepted LTD, and believed that her benefits would continue, as was explained to her. |

| | |
|---|---|
| 8.  With a single sentence from an email,[16] Hwang has now invented new facts: | This is wrong on several levels, least of which is that there are several other relevant "lines" of email which KSU fails to reference. |
| a)  Hwang asks Tolar if she has any other options (that would not require termination). (Aplee. Brief at 17). | <u>See</u> Aplt. App. at 42, where Hwang asks "…whether this is all true or whether we can label my absence this semester as 'Leave without Pay' or something else, so I don't have to go through re-applying for my old job back, for lower pay." |
| b)  Hwang alleged she would have been able to perform all of the essential functions of her job, if she had an accommodation that would allow her to remain off campus until the end of the spring semester. (Aplee. Brief at 17). | Hwang said that she would be able to return and teach online as she always did. (Aplt. App. at 10 ¶ 36).  This is performing all of the functions of her job. She is not required at the pleading stage to describe a laundry list of functions. Again, this is an issue for summary judgment<br><br>Dr. McGuirk explained that Hwang was in full remission and should be allowed to return to work for the summer semester. (Aplt. App. at 78) |
| c)  Hwang presented the University with a variety of options for accommodation including: shared leave until the end of summer semester, or until the end of spring semester with online teaching in the summer, or leave without pay with the same two durational options. Hwang also suggested temporary online teaching duties, or any other accommodation that would allow her remain off campus until she could safely return at the end of the spring | <u>See</u> No. 2, above, for discussion. |

---

[16] Please see section above regarding the discussion on the emails that KSU omitted, but which are nevertheless relevant and part of the record.

| | |
|---|---|
| semester. (Aplee. Brief at 17). | |
| d) The court ignored Hwang's allegations that she asked for shared leave, unpaid leave, or any leave that would allow her to keep her job. (Aplee. Answer Brief at 17). | The court did ignore Hwang's allegations. It failed to address KSU's total failure to participate in the interactive process or KSU's failure to consider other leave options that would not require Hwang to resign. The court held only that the statue relevant to KSU's shared leave program was not unconstitutional. Therefore Hwang was unable to articulate illegal conduct. (Aplt. App. at 126). |
| 9.  Hwang tries to pose her resignation as a "constructive discharge," which is neither supported by requisite factual allegations nor remotely plausible.  (Aplee. Answer Brief at 27). | This is untrue.  Hwang does, in fact, allege:<br><br>• "Dr. Tolar specifically denied Ms. Hwang any accommodation that would allow her to keep her job.  [She] emphaised that regardless of which option Ms. Hwang chose the result would be termination of her job."  (Aplt. App. at 11 ¶¶ 46-47).<br><br>• "A single mother of two, in treatment for her second bout with cancer, Ms. Hwang had no option but to accept LTD. Consequently, on that same day, February 19th, Ms. Hwang sent an e-mail to Dr. Tolar stating that she would have to take the LTD, since the University gace her no viable option."  (Aplt. App. at 11 ¶ 49- 12 ¶ 50).<br><br>• "Ms. Hwang was forced  to accept LTD and was constructively fired." (Aplt. App. at 15 ¶ 87). |

Although it was necessary to respond to the above charges, the fact remains that none of these issues that KSU raises are relevant to, or assist the Court on the issue to be decided: Did Hwang's complaint state a plausible claim for relief?

### C. KSU ignores Hwang's arguments, allegations, and the record.

KSU ignores the real issue as well as Hwang's allegations by introducing the red herring of a regulation allegedly prohibiting Hwang from continuing in a state leave program.  In its arguments, it focuses on that one program ignoring that the issue is leave/accommodation of *any* kind.  Regardless, KSU insists that it *did* accommodate Hwang, she was not constructively discharged, and she *knew* that her health insurance would be cancelled.  But the facts show otherwise.

**KSU's Accommodations:**  The main argument and the theme that runs throughout KSU's entire brief goes as follows:  Hwang needed a limited extended leave to protect her compromised immune system from a campus wide H1N1 outbreak, and KSU did not fail to accommodate her.  In fact, they offered her two choices of accommodation.

Here is the problem.  The first  "accommodation" was to go on Long Term Disability (LTD), collect a fraction of her pay (minus social security), (Aplt. App. at 47) and be forced to resign immediately.  (Aplt. App. at 44).  The second "accommodation," was to get no pay and no benefits, effective immediately.  This accommodation was called leave without pay but only the "without pay" part is accurate.  This particular leave without pay would continue for a few months, until Hwang's current contract was up,[17] at

---

[17] Which was renewed every year, absent cause.

which time she would be terminated.  (Aplt. App. at 44).  Both of these options left Hwang with no job, the precise situation the Rehabilitation Act is meant to prevent.

**Constructive discharge and insurance benefits**:  Regardless, Hwang  had no choice but to accept what she was offered. And KSU helped her make the difficult decision of which of these "lucrative"[18] options to choose, by making a "limited time only" offer.

Knowing that Hwang was in the midst of chemotherapy,  Dr. Tolar was able to nudge Ms. Hwang into making a decision by sending her an email for the purpose of informing Hwang that her shared leave would end the next day — as would her pay and benefits — and if she did not make a decision  within a week she would not receive LTD benefits, she would be responsible for her health insurance premiums, and she would be terminated as soon as her "unpaid leave" ended. (Aplt. App. at 45-46).  Knowing she needed chemotherapy, knowing that she had two minor children, Hwang chose the first option, which would give her some income and health care  benefits (Aplt. App. at 11 ¶ 49; and Aplt. App. at 47).  It does not, as KSU would say, "require Solomonic common sense or judicial experience to appreciate"[19]  that this "choice" was no choice at all. Hwang was constructively discharged, forced upon her solely because of her disability and it was certainly not an accommodation.

### D.  Hwang did not "render herself not qualified"

KSU uses this same theory in arguing that Hwang rendered herself "not qualified." Here, KSU explains that although Hwang's alleged request for accommodation was not a

---

[18] Aplt. App. at 28 and Aplt. App. at 29.
[19] Aplee. Answer Brief at 19.

"legally reasonable,"[20] it went ahead and offered her four months of leave without pay anyway. (Aplee. Answer Brief at 32). First, it is difficult to understand how this request could be an "alleged request" when KSU admits it *granted* the request. But regardless, KSU claims that it offered it to Hwang and she rejected it. . (Aplee. Answer Brief at 32). Because she rejected this reasonable accommodation of four months unpaid leave (after which, again, she gets terminated) she is unqualified as a matter of law, KSU posits.

Now, to refresh the Court, this illusory "leave" was one of the two "options" Mary Tolar offered to Hwang when Hwang asked for accommodation. Hwang "rejected" the unpaid leave — or more properly get-fired-now- option— in favor of the LTD, where at least she would be getting *some* minimal benefits after being terminated. So, it's a puzzle how Hwang can be considered to have rejected a reasonable accommodation. It is even more of a puzzle how this "leave without pay" shell game can be considered accommodation. No amount of wordsmithing can turn KSU's alleged accommodations into anything other than what they are — a convenient, but transparent, attempt to walk away from a long time employee and avoid its responsibilities under the Rehabilitation Act.

### E.  KSU's accusations of dishonesty.

Throughout its brief KSU to attacks Hwang's complaint by contending that Hwang and her counsel have made false allegations, embellished and invented

---

[20] KSU has added nothing material the argument concerning the reasonableness of extended leave, therefore Hwang will rest on her opening brief.

allegations, fabricated facts, and misrepresented the record.  Not one of these accusations stand up to scrutiny.

<u>**CONCLUSION**</u>

The one issue, the *only* issue identified by KSU that this court needs to decide, is whether the District Court erred in its determination that Hwang failed to plausibly state her Rehabilitation Acts claims.  We submit that she did.  KSU has added nothing credible in its response that refutes Hwang's opening brief.  Hwang's complaint is detailed and complete, it states the who, what, and where.  KSU asks this Court to render Fed. R. Civ. P. 8 meaningless. Grace Hwang respectfully requests this court to reverse the District Court and the dismissal of this complaint.

**Respectfully submitted,**

**LEEDS LAW, LLC**

By: *s/Luanne Leeds*
LUANNE LEEDS**,** #22774
515 SW Horne, Suite 201
Topeka, KS 66606
(785) 354-0727
FAX (785) 354-0736
leedslua@gmail.com
*Attorney for the Appellant/Plaintiff*

## <u>CERTIFICATE OF DIGITAL SUBMISSION</u>

 I hereby certify that a copy of the foregoing **Appellant's Reply Brief**, as submitted in Digital Form via the Court's ECF system, is an exact copy of the written document filed with the Clerk and has been scanned for viruses with ESET NOD 2 v. 4.2.40.0 and, according to the program, it is free of viruses.  In addition, I certify that all required privacy redactions have been made.

 *s/Luanne Leeds*         
**LUANNE LEEDS**, #22774

## <u>CERTIFICATE OF COMPLIANCE</u>

As required by Fed. R. App. P. 32(a)(7)(c), I certify that this brief is proportionally spaced and contains **5,238** words.  I relied on my word processor, Microsoft Word 2010, to obtain the count.

I certify that the information on this form is true and correct to the best of my knowledge and belief formed after a reasonable inquiry.

_s/Luanne Leeds_

**LUANNE LEEDS**, #22774

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 12th day of September, 2013, the above and foregoing was electronically filed with the clerk of the court by using the CM/ECF system, which will send notice of electronic filing to the following:

Peter J. Paukstelis, #17482
petepauk@ksu.edu
*Attorney for Appellee/Defendant*


 *s/Luanne Leeds*
**LUANNE LEEDS**, #22774